[Civ. No. 39386. Second Dist., Div. Two. Aug. 21, 1972.]

VICTOR LARSON et al., Plaintiffs and Appellants, v.
CITY OF REDONDO BEACH et al., Defendants and Respondents.

**COUNSEL**

Gordon C. Phillips for Plaintiffs and Appellants.

A. Roger Sailors, City Attorney, for Defendants and Respondents.

**OPINION**

**HERNDON, J.—**

### Statement of the Case

Appellants commenced this proceeding by filing a petition for a writ of mandate to compel the respondents, City of Redondo Beach, the mayor, the five councilmen of the City of Redondo Beach, the city manager and the director of property management "to immediately proceed and commence, before a board of arbitrators or the Harbor Review Board, to ascertain and declare a fair, reasonable, and non-discriminatory rate for all boat slip rentals in the King Harbor Marina, California Small Boat Harbor, since slip renting began to the time of trial herein;" and to "issue appropriate administrative orders to enforce such slip rental rates and charges by the marina lessees of slip rental facilities."

Respondents filed a demurrer to the petition which the trial court sustained without leave to amend. Thereafter, judgment of dismissal was entered and appellants filed this appeal. Appellant, King Harbor-Redondo Beach Boat Owners Association, Inc., is a non-profit corporation whose members are owners of small boats and rent boat slips in some portion of Redondo Beach King Harbor. The individual appellants are members of the King Harbor-Redondo Beach Boat Owners Association, Inc.

### Statement of the Facts

Redondo Beach King Harbor is a public small craft harbor situated within the boundaries of Redondo Beach and located partially upon tidelands granted to the City of Redondo Beach by the State of California in 1915 and partially on "uplands." The United States Government financed the building of a breakwater into the open ocean and pursuant to its Ordinance No. 1682 the City of Redondo Beach financed the rough construction of the inner moles and sea walls with the proceeds from the sale of $9,000,000 worth of revenue bonds pursuant to the provisions of the Revenue Bond Law of 1941 and its powers as a charter city.

The legal and contractual framework under which the Redondo Beach King Harbor was originally financed and continues to be operated and maintained is contained in Ordinance No. 1711. The purpose of the ordinance was to authorize the issuance of the bonds and to constitute a contract between the City of Redondo Beach and the bond buyers. Since the bonds that were issued were essentially "revenue" bonds, the ordinance or contract was to assure potential bond buyers that the city would take such action as was required to keep revenue from the harbor at a maximum in order to make the bond payments.

After the harbor was constructed the City of Redondo Beach leased out portions of the harbor area to private operators who constructed boat slips thereon and rented them to appellants and others for a fee.

The revenue produced from the operation of the harbor, together with other revenue which is pledged to payment of the bonds, has been and is insufficient to make the payments on the bonds. The City of Redondo Beach has been since 1965, and presently is, in default on the interest and principal payments on the bonds.

### Appellants' Basic Position

Appellants have stated the essence of their case as follows: "The Petitioners allege that the City has allowed each of its lessees to arbitrarily and unreasonably impose charges on persons using the Marina facilities, and that as a result thereof the Petitioners contend that there exists violations of the Tidelands Act, the Ordinance, and the various leases to the marina lessees, and as a further result, the City is allowing the marina lessees to make an excess profit which is contrary to the public interests.

"The Petitioners have demanded that the City regulate the rates for small craft in the King Harbor Marina, but that the City has failed and refused, and continues to fail and refuse, to perform duties imposed upon it under the tidelands trust, Ordinance 1682, and the leases between the City and the marina lessees."

### The Trial Court's Ruling

The record discloses that respondents' demurrer was sustained on the following grounds as stated in the Order: "(1) The petition does not sufficiently allege that respondents, or any of them, are required by law to perform the act or acts which petitioners request the court to order performed by respondents. (2) The petition fails to allege facts sufficient to

establish that the act or acts which petitioners seek to have respondents ordered to perform are 'ministerial acts' rather than 'legislative acts.' (3) The petition fails to state facts sufficient to establish that petitioners do not have a plain, speedy and adequate remedy, in the ordinary course of law. (4) It cannot be ascertained from the petition what acts petitioners demand be performed by respondents or what duty petitioners contend respondents have to perform such acts. (5) It cannot be ascertained from the petition in what way or manner the law imposes the alleged duty on respondents."

■ *A Writ Of Mandate Will Issue Only To Compel The Performance Of An Act Which The Law Specifically Enjoins; The Writ Will Not Lie To Control The Discretion Conferred Upon A Public Officer Or Agency.*

We have concluded that the ruling of the trial court is supported by well-established law. The rules governing the availability of the writ of mandate were recently restated in *People* ex rel. *Younger* v. *County of El Dorado,* 5 Cal.3d 480, 490-491 [96 Cal.Rptr. 553, 487 P.2d 1193], as follows: ■ "We first inquire into the propriety of the remedy invoked by petitioner. A writ of mandate will lie to 'compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station' (Code Civ. Proc., § 1085) 'upon the verified petition of the party beneficially interested,' in cases 'where there is not a plain, speedy, and adequate remedy, in the ordinary course of law.' (Code Civ. Proc., § 1086.) The writ will issue against a county, city or other public body or against a public officer. (*Housing Authority* v. *City of L. A.* (1952) 38 Cal.2d 853, 869-871 [243 P.2d 515], cert. den. (1952) 344 U.S. 836 [97 L.Ed. 651, 73 S.Ct. 46]; *Hawthorn* v. *City of Beverly Hills* (1952) 111 Cal.App.2d 723, 731 [245 P.2d 352].) However, the writ will not lie to control discretion conferred upon a public officer or agency. (*Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 315 [144 P.2d 4]; *Faulkner* v. *Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 326 [253 P.2d 659].) ■ Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent (*Faulkner* v. *Cal. Toll Bridge Authority, supra; Sherman* v. *Quinn* (1948) 31 Cal.2d 661, 664 [192 P.2d 17]; *Browning* v. *Dow* (1923) 60 Cal.App. 680, 682 [213 P. 707]); and (2) a clear, present and beneficial right in the petitioner to the performance of that duty (*Parker* v. *Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6]). (See generally 3 Witkin, Cal. Procedure (1954) Extraordinary Writs, § 40 et seq., pp. 2520 et seq.)"

In affirming a judgment of the trial court dismissing a mandamus proceeding after sustaining a demurrer to the petition without leave to amend, this court stated the law as follows in *Hilton* v. *Board of Supervisors,* 7 Cal.App.3d 708, 713 [86 Cal.Rptr. 754]: "At the outset it is settled that the sufficiency of a petition in a mandamus proceeding can be tested by demurrer. (*Temescal Water Co.* v. *Department of Public Works,* 44 Cal.2d 90, 106-107 [280 P.2d 1].) Provision for the writ here sought is found in section 1085, Code of Civil Procedure, which declares that it 'may be issued . . . to any . . . board, or person, to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station. . . .' By the statute's very terms it is thus limited to the enforcement of purely ministerial duties and 'will not lie to control discretion within the area lawfully entrusted to the administrative agency.' (*Faulkner* v. *California Toll Bridge Authority,* 40 Cal.2d 317, 326 [253 P.2d 659].)"

 In this case appellants have sought the writ to compel respondents to make certain investigations to determine whether or not boat slip rentals being charged in Redondo Beach King Harbor are fair, equitable and in fair competition with rates being charged for similar services in other small craft harbors in Southern California.

Appellants argue that the duty to conduct such hearings or investigations is imposed either by (1) the tidelands grant from the State of California to the City of Redondo Beach; (2) the provisions of Ordinance 1711; (3) a contractual right owed by the city to appellants arising from harbor leases between the City of Redondo Beach and the master lessees of various parts of Redondo Beach King Harbor; or (4) a general duty of unspecified origin to exercise control over the prices charged by the city's master lessees on the theory that such master lessees have been granted a franchise by the city or on an equally vague or unspecified duty imposed upon respondent city on the theory that the Redondo Beach small craft harbor is a public utility and that in such case the city has an obligation to regulate charges and the conduct of the harbor and further, that such regulation necessitates investigations and/or public hearings either on demand of some unspecified person or group or on a periodic basis.

After a consideration of each of the sources relied upon by appellants to supply the legal foundation for the duty which they seek to enforce, we conclude that none of them supplies, nor do all of them in combination supply, any law which, either specifically or by necessary implication, enjoins the performance of the acts which appellants seek to compel.

 The operation of a harbor involving the use of tidelands is a matter

of statewide concern, but to the extent that the function of operation is delegated to a municipality possessing the necessary powers, it becomes a municipal affair. (*City of Long Beach* v. *Lisenby,* 175 Cal. 575, 583 [166 P. 333]; *Silver* v. *City of Los Angeles,* 57 Cal.2d 39, 41 [17 Cal.Rptr. 379, 366 P.2d 651].)

▮ The tidelands grant, the detailed provisions of the city charter, the applicable ordinances and the leases executed by the city all appear to be mutually consistent and sufficient to meet every requirement of law. The powers exercised by the city in the control and management of the harbor are necessarily discretionary in nature. The courts will not entertain actions to control the exercise of such powers except "in cases involving fraud, collusion, ultra vires, or a failure on the part of the governmental body to perform a duty specifically enjoined." (*Silver* v. *City of Los Angeles, supra,* 57 Cal.2d 39, 41.)

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied September 7, 1972, and appellants' petition for a hearing by the Supreme Court was denied October 18, 1972.