[No. C012961. Third Dist. Aug. 2, 1993.]

GRANT L. HUTCHINSON et al., Plaintiffs and Respondents, v.
CITY OF SACRAMENTO, Defendant and Appellant.

## COUNSEL

Sharon Siedorf Cardenas, City Attorney, William P. Carnazzo, Assistant City Attorney, and Leslie R. Lopez, Deputy City Attorney, for Defendant and Appellant.

Adamo & Nevarez and John B. Adamo for Plaintiffs and Respondents.

## OPINION

**PUGLIA, P. J.**—This appeal presents the question whether changed circumstances trigger a ministerial duty requiring a city to review and reevaluate a previously established speed limit on its streets. The trial court ruled there is such a ministerial duty and issued a writ of mandate directing the defendant City of Sacramento (City) to conduct engineering and traffic surveys of a segment of H Street and to consider such surveys and exercise its discretion in reevaluating the speed limit previously established for that street.

The City appeals, contending no such ministerial duty exists. The City asserts the decision whether and when to reevaluate an established speed limit is within its discretion and thus beyond the reach of the remedy of mandate. We agree with the City and reverse the judgment.

In 1973, the City adopted Ordinance No. 3259—Fourth Series (the 1973 ordinance) establishing speed limits for certain city streets. Included was that part of H Street between "Alhambra to [east] of 57th Street" as to which the 1973 ordinance established a speed limit of 35 miles per hour.

In November 1989, the City commissioned a private consulting firm to do a traffic study of a part of the City which includes the segment of H Street at issue here. The consultants completed the study and submitted a draft report to the City in March 1991. The draft report assesses various alternatives for traffic management in the study area. When this proceeding was initiated, the City was reviewing the draft report but had not implemented or adopted any of the alternatives set forth in the report.

Plaintiffs Grant L. Hutchinson and Robert Ansell each own a residence on H Street between Alhambra and 57th Street. Apparently dissatisfied with the pace of the City's review of the draft report, plaintiffs initiated the underlying mandate proceeding in May 1991. Plaintiffs' petition alleges the City has a ministerial duty to establish a speed limit of 25 miles per hour on H Street between Alhambra Boulevard and 34th Street. Plaintiffs sought a writ of

mandate "directing [the City] to set aside its posted 35 miles per hour speed limit, and to establish the proper 25 miles per hour speed limit . . . on H Street between Alhambra Boulevard and 34th Street." The City answered.

After a hearing, the trial court issued a writ of mandate "but . . . in a substantially different form than prayed for by petitioners." In its written ruling the trial court concluded:

1. The establishment by a city of a speed limit is not a ministerial act but "involves the [exercise] of discretion."

2. The City's 1973 ordinance is valid. "In enacting this ordinance the City Council was performing a legislative function and exercising its discretion."

3. However, the City has a ministerial duty to conduct an engineering and traffic survey of a street when "changed conditions" are brought to the City's attention. "When the circumstances, such as the volume of traffic, have changed dramatically since the original establishment of a speed limit, common sense suggests that the [the City] must review the changed conditions. [Engineering and traffic] surveys are required by statute every five years in order to permit radar enforcement of speed law. ([Veh. Code, §] 40802(c) [*sic*].) It would be ironic to conclude that such surveys are regularly required for radar purposes, yet are never required to evaluate the effects on safety or on the movement of traffic caused by a given speed limit. Case law suggests such a [ministerial] duty exists. (*Bane* v. *State of California* (1989) 208 Cal.App.3d 860, 872-875 [256 Cal.Rptr. 468].) When such a duty arises may not be capable of a precise determination. However, due to the significant increase in traffic flow on H Street since 1973, and the Draft Report indication of a significantly high accident rate on the street, a [ministerial] duty clearly arises at this point to review the appropriateness of the 35 mile per hour speed limit."

I

Travel upon local streets is a matter of statewide concern, and local agencies cannot regulate or affect such travel except as authorized by statute. (Veh. Code, § 21; see *Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 550 [183 Cal.Rptr. 73, 645 P.2d 124].)

Vehicle Code section 22352 states in relevant part: "The prima facie limits are as follows and shall be applicable unless changed as authorized in this code and, if so changed, only when signs have been erected giving notice thereof . . . .

"(b) Twenty-five miles per hour:

"(1) On any highway other than a state highway, in any business or residence district unless a different speed is determined by local authority under procedures set forth in this code."[1]

Vehicle Code section 22357 states in part: "Whenever a local authority determines upon the basis of an engineering and traffic survey that a speed greater than 25 miles per hour would facilitate the orderly movement of vehicular traffic and would be reasonable and safe upon any street other than a state highway otherwise subject to a prima facie limit of 25 miles per hour, the local authority may by ordinance determine and declare a prima facie speed limit of 30, 35, 40, 45, or 50 miles per hour or a maximum speed limit of 55 miles per hour, whichever is found most appropriate to facilitate the orderly movement of traffic and is reasonable and safe. The declared prima facie or maximum speed limit shall be effective when appropriate signs giving notice thereof are erected upon the street and shall not thereafter be revised except upon the basis of an engineering and traffic survey."

Thus a city may by ordinance increase the prescribed 25-mile-per-hour speed limit in a residence district (Veh. Code, § 22352) only on the basis of an engineering and traffic survey which supports a higher speed limit to facilitate the orderly movement of traffic and which speed limit is reasonable and safe.[2] Pursuant to that authority, the City adopted the 1973 ordinance raising the speed limit on H Street from 25 to 35 miles per hour. ▮▮▮ We agree with the trial court that "in enacting this ordinance the [City] was performing a legislative function and exercising its discretion." Any action taken by the City under the statute to reduce the speed limit by ordinance as prayed by plaintiffs would similarly involve a legislative act and the exercise of discretion.

However, neither plaintiffs nor the trial court has identified the source of the ministerial duty which the trial court concluded specifically enjoined the City to respond to changed conditions by conducting an engineering and

[1]The parties agree that the segment of H Street in controversy lies in a "residence district" (see Veh. Code, §§ 240 & 515).

[2]Vehicle Code section 627 defines an engineering and traffic survey: "(a) 'Engineering and traffic survey', as used in this code, means a survey of highway and traffic conditions in accordance with methods determined by the Department of Transportation for use by state and local authorities.

"(b)   An engineering and traffic survey shall include, among other requirements deemed necessary by the department, consideration of all of the following:

"(1)   Prevailing speeds as determined by traffic engineering measurements.

"(2)   Accident records.

"(3)   Highway, traffic, and roadside conditions not readily apparent to the driver."

traffic survey and reevaluating the speed limit established for H Street by the 1973 ordinance.

"A writ of mandate will lie to 'compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station' (Code Civ. Proc., § 1085) 'upon the verified petition of the party beneficially interested,' in cases 'where there is not a plain, speedy, and adequate remedy, in the ordinary course of law.' (Code Civ. Proc., § 1086.) ■ The writ will issue against a county, city or other public body or against a public officer. (*Housing Authority* v. *City of L.A.* (1952) 38 Cal.2d 853, 869-871 [243 P.2d 515], cert. den. (1952) 344 U.S. 836 [97 L.Ed. 651, 73 S.Ct. 46]; *Hawthorn* v. *City of Beverly Hills* (1952) 111 Cal.App.2d 723, 731 [245 P.2d 352].) However, the writ will not lie to control discretion conferred upon a public officer or agency. (*Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 315 [144 P.2d 4]; *Faulkner* v. *Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 326 [253 P.2d 659].) Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent (*Faulkner* v. *Cal. Toll Bridge Authority, supra*; *Sherman* v. *Quinn* (1948) 31 Cal.2d 661, 664 [192 P.2d 17]; *Browning* v. *Dow* (1923) 60 Cal.App. 680, 682 [213 P. 707]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty (*Parker* v. *Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6]." (*Larson* v. *City of Redondo Beach*(1972) 27 Cal.App.3d 332, 336 [103 Cal.Rptr. 592].)

■ As the trial court recognized, the enactment or amendment of a speed limit ordinance is not a ministerial act, but a legislative one involving the exercise of discretion. A necessary prelude to that legislative act is the completion and consideration of an engineering and traffic survey (Veh. Code, § 22357). Absent legislative action by a city, the speed limit remains either as prescribed by Vehicle Code section 22352 or as previously established by ordinance under Vehicle Code section 22357. Whether and when the City should resort to the legislative process to establish or amend a speed limit is not addressed in the statute. The City's authority to decide whether and when to reevaluate an established speed limit implicates its legislative power and is not subject to review as a ministerial duty. (See *Common Cause* v. *Board of Supervisors* (1989) 49 Cal.3d 432, 442-443 [261 Cal.Rptr. 574, 777 P.2d 610].)

■ Mandate will not issue to compel action unless it is shown "the duty to do the thing asked for is plain and unmixed with discretionary power or the exercise of judgment." (*Texas Co.* v. *Superior Court* (1938) 27 Cal.App.2d 651, 654 [81 P.2d 575].)

The trial court noted that engineering and traffic surveys must be conducted every five years on streets where the speed limit is enforced by radar (Veh. Code, §§ 40802, 40803). The trial court believed, "[i]t would be ironic to conclude that [traffic and engineering] surveys are regularly required for radar purposes, yet are never required to evaluate the effects on safety or on the movement of traffic caused by a given speed limit."

In a prosecution for violation of the speed law, Vehicle Code section 40803 prohibits any evidence obtained by use of a speedtrap. Vehicle Code section 40802, subdivision (b) defines a speedtrap to include "A particular section of a highway with a prima facie speed limit provided by this code or by local ordinance . . . which speed limit is not justified by an engineering and traffic survey conducted within five years prior to the date of the alleged violation, and where enforcement involves the use of radar or other electronic devices which measure the speed of moving objects."[3]

We see no anomaly in the fact the Legislature has mandated periodic engineering and traffic surveys for one purpose, the enforcement of the speed laws by radar, while not doing so for another entirely unrelated purpose, the periodic evaluation of the appropriateness of existing speed limits to facilitate safety and the orderly movement of traffic. The legislative judgment to commit the latter function to the discretion of cities renders it a matter beyond the power of mandate to compel.

The trial court cited *Bane v. State of California, supra,* 208 Cal.App.3d 860 as "suggest[ing]" there is a ministerial duty to reevaluate established speed limits when changed conditions are brought to the local agency's attention. *Bane* involved an action for personal injury and wrongful death arising from an automobile accident at a highway intersection allegedly defective in its design. Defendant State of California relied on Government Code section 830.6, which provides design immunity as an affirmative defense to liability for a dangerous condition of public property. The state prevailed at trial. The issue on appeal was the sufficiency of the evidence at trial to support the design immunity defense.

The Court of Appeal reversed. "[A]s applied to the present case, once the state was put on notice that the June 1984 design for which the state had immunity nevertheless produced a dangerous condition, the immunity continued only for a reasonable time to allow the state to acquire the funds and to correct the dangerous condition. Once this time period expired, the

---

[3]Although subdivision (b) is expressly inapplicable to "local streets and roads," it applies to H Street because H Street has been designated a principal arterial on functional usage and federal aid system maps. (See Veh. Code, § 40802, subd. (b).)

immunity ended." (*Bane* v. *State of California, supra,* 208 Cal.App.3d at p. 870.) "No public policy is served by continuing to immunize the public entity for a plan after it becomes clear that its design is no longer reasonable and an opportunity to make a change is afforded." (*Id.,* at p. 871.) *Bane* deals with a city's liability for a dangerous condition of public property and the defenses thereto. It does not specifically impose a ministerial duty on public entities to correct dangerous conditions.

The trial court stated "common sense suggests that the City must review the changed [traffic] conditions." We agree that common sense should motivate a public entity to take the initiative to reduce its risk of exposure to liability for a dangerous condition of public property. But common sense does not reside exclusively in the courts. In a system in which governmental power is distributed among equal coordinate branches, the judiciary has no charter to impose its view of common sense on another branch any more than it does to compel the performance of a duty it views as a moral obligation. (*Ramsay* v. *Cullen* (1921) 56 Cal.App. 5, 6 [204 P. 251].)

II

■   Plaintiffs expend most of their efforts on appeal challenging the validity of the 1973 ordinance. They argue that prior to adopting the 1973 ordinance, the City did not prepare an engineering and traffic survey in accordance with Vehicle Code section 627. (See fn. 1, *ante.*) The trial court found the 1973 ordinance valid. Plaintiffs did not file a cross-appeal.

It is a general rule a respondent who has not appealed from the judgment may not urge error on appeal. (*Puritan Leasing Co.* v. *August* (1976) 16 Cal.3d 451, 463 [128 Cal.Rptr. 175, 546 P.2d 679].) A limited exception to this rule is provided by Code of Civil Procedure section 906, which states in pertinent part: "The respondent . . . may, without appealing from [the] judgment, request the reviewing court to and it may review any of the foregoing [described orders or rulings] for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken." "The purpose of the statutory exception is to allow a respondent to assert a legal theory which may result in affirmance of the judgment." (*California State Employees' Assn.* v. *State Personnel Bd.* (1986) 178 Cal.App.3d 372, 382, fn. 7 [223 Cal.Rptr. 826].)

Plaintiffs are incorrect in suggesting invalidation of the 1973 ordinance is simply an alternative legal theory upon which the judgment may be affirmed. Were we to consider the merits of plaintiffs' claim and hold the 1973

ordinance invalid, the effect would be to restore the speed limit on H Street to the 25 miles per hour prima facie limit for residence districts established by Vehicle Code section 22352. Yet the trial court's judgment does not require restoration of the 25 mile-per-hour speed limit. It simply requires the City to conduct an engineering and traffic survey of H Street and thereafter to exercise its discretion in light of that survey to establish an appropriate speed limit. In short, "without appealing, [plaintiffs seek] not to save the judgment but to overthrow it. This cannot be done[.]" (*Califonia State Employees' Assn.* v. *State Personnel Bd.*, *supra*, 178 Cal.App.3d at p. 382.) Because plaintiffs did not appeal, we will not review their contention the 1973 ordinance is invalid. (*Ibid.*; see Code Civ. Proc., § 906; *Henigson* v. *Bank of America* (1948) 32 Cal.2d 240, 244 [195 P.2d 777].)

The judgment is reversed and the matter remanded to the trial court with directions to enter judgment denying the petition. City is to recover its costs on appeal.

Blease, J., and Sims, J., concurred.

A petition for a rehearing was denied August 30, 1993, and respondents' petition for review by the Supreme Court was denied November 10, 1993.