[No. C065237. Third Dist. Mar. 1, 2012.]

HEIDI FULLER, Plaintiff and Appellant, v.
DEBRA BOWEN, as Secretary of State, etc., et al., Defendants and
Respondents;
TOM BERRYHILL, Real Party in Interest and Respondent.

## Counsel

Heidi Fuller, in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Douglas J. Woods, Acting Assistant Attorney General, and Seth E. Goldstein, Deputy Attorney General, for Defendants and Respondents.

Bell, McAndrews & Hiltachk, Charles H. Bell, Jr., and Brian T. Hildreth for Real Party in Interest and Respondent.

Diane F. Boyer-Vine and Catherine Bidart for Legislature of the State of California as Amicus Curiae.

## OPINION

**MAURO, J.**—In the 2010 primary election, Heidi Fuller and Tom Berryhill were both candidates for state senator in the 14th Senate district. Prior to the primary election, however, Fuller asked the superior court to issue orders that would prevent Berryhill's name from being placed on the primary election ballot. Fuller alleged that Berryhill had not resided in the 14th Senate district for at least one year as required by the California Constitution.

The superior court declined to prevent Berryhill's name from being placed on the ballot, concluding that the one-year residency requirement violated the equal protection clause of the Fourteenth Amendment to the United States Constitution. Fuller now contends on appeal that the superior court erred in ruling that the one-year residency requirement is unconstitutional.

█ We do not address whether the one-year residency requirement is unconstitutional, because a threshold jurisdictional issue resolves this case. The California Constitution vests in each house of the Legislature the sole authority to judge the qualifications and elections of a candidate for membership in that house, even when the challenge to the candidate's qualifications is brought prior to a primary election. Under the facts presented in this case, California courts lack jurisdiction to judge Tom Berryhill's qualifications to serve as a senator for the 14th Senate district.

We will affirm the judgment.[1]

## BACKGROUND

Heidi Fuller and Tom Berryhill both sought to be the Republican nominee for state senator in the 14th Senate district. But before the June 8, 2010 Primary Election took place, Fuller filed a petition for writ of mandate in the Sacramento Superior Court. To understand the basis for Fuller's court challenge, we begin with an overview of the relevant legal framework.

---

[1] Because we do not reach Fuller's constitutional contentions, her request that we take judicial notice of material bearing on those issues is denied. (See request for judicial notice filed May 9, 2011.)

Article IV, section 2, subdivision (c) of the California Constitution[2] provides that "[a] person is ineligible to be a member of the Legislature unless the person is an elector and has been a resident of the legislative district for one year . . . immediately preceding the election." Elections Code section 8020[3] states that no candidate's name may be printed on the primary ballot unless a declaration of candidacy (§ 8040) and signed nomination papers (§ 8041) are delivered to the county elections official. The declaration of candidacy must substantially comply with the example set forth in the statute, which includes a declaration that the candidate meets the constitutional residency requirements. (§ 8040.)

After the signatures are verified, the nomination documents are forwarded to the Secretary of State, "who shall receive and file them." (§ 8082.) "At least 68 days before the direct primary, the Secretary of State shall transmit to each county elections official a certified list of candidates who are eligible to be voted for in his or her county at the direct primary." (§ 8120.) "Unless otherwise specifically provided, no person is eligible to be elected or appointed to an elective office unless that person is a registered voter and otherwise qualified to vote for that office at the time that nomination papers are issued to the person or at the time of the person's appointment." (§ 201.)

A candidate for state senate must also file a statement of intention and a recipient committee statement of organization. (Gov. Code, §§ 85200, 84101.) The Secretary of State is the designated filing officer for these documents. (Gov. Code, § 85200.) The filing officer has a duty to determine whether the original documents conform on their face with the Political Reform Act of 1974 (Gov. Code, § 81000 et seq.) (Cal. Code Regs., tit. 2, §§ 18110, 18410), but the filing officer is not required to seek or obtain other information to verify the entries. The filing officer must accept for filing any campaign statement which the Political Reform Act of 1974 requires to be filed with the filing officer. (Cal. Code Regs., tit. 2, § 18110.)

 Section 13314 permits an elector to obtain a writ of mandate concerning impending election error under specified circumstances. Section 13314 provides in pertinent part: "(a)(1) An elector may seek a writ of mandate alleging that an error or omission has occurred, or is about to occur, in the placing of a name on, or in the printing of, a ballot, sample ballot, voter pamphlet, or other official matter, or that any neglect of duty has occurred, or is about to occur. [¶] (2) A peremptory writ of mandate shall issue only upon proof of both of the following: [¶] (A) That the error, omission, or neglect is in violation of this code or the Constitution. [¶] (B) That issuance of the writ will not substantially interfere with the conduct of the election. [¶] . . . [¶] (4)

---

[2] Undesignated article references are to the California Constitution.

[3] Undesignated statutory references are to the Elections Code.

The Secretary of State shall be named as a respondent or a real party in interest in any proceeding under this section concerning a measure or a candidate described in Section 15375 . . . ," which includes a candidate for a member of the Senate.

Fuller filed a petition for writ of mandate pursuant to section 13314, subdivision (a), alleging that Berryhill had not met the one-year residency requirement set forth in article IV, section 2, subdivision (c). Fuller acknowledged in her petition that prior opinions by the Attorney General concluded that the Secretary of State could not refuse to file a declaration of candidacy based on an alleged failure to meet the residency requirement (56 Ops.Cal.Atty.Gen. 365, 367 (1973)), and that the Secretary of State was not authorized to enforce the constitutional residency requirement (62 Ops.Cal.Atty.Gen. 365 (1979)). Nonetheless, Fuller argued that those prior Attorney General opinions were wrong.

Fuller asked the superior court to order the Attorney General "to direct the Secretary of State that proof of compliance with the residency requirements of [article IV, section 2] of the California State Constitution be satisfied before accepting a Statement of Intention to be declared a candidate for the Assembly or the Senate." Fuller also asked the superior court to compel the Secretary of State to reject Berryhill's statement of intention for candidacy, his statement of organization of a recipient committee, and his declaration of candidacy for the 14th Senate district. The effect would be to prevent Berryhill's name from being placed on the primary election ballot. (§§ 13, 8020.)

The Attorney General responded to the writ petition by asserting that a writ of mandate will not issue in the absence of a clear, present, and ministerial duty, and that Fuller failed to identify any such duty. The Attorney General argued that although the Attorney General has a statutory duty to issue a written legal opinion when asked to do so by certain state officers "upon any question of law relating to their respective offices" (Gov. Code, § 12519), the Attorney General does not have a ministerial duty to come to a particular conclusion, nor can the Attorney General "direct" the Secretary of State to act in a particular fashion.

Berryhill and the Secretary of State also responded to the writ petition. They argued that neither the Secretary of State nor the superior court could judge Berryhill's qualifications for membership in the Senate, because article IV, section 5, subdivision (a) states that each house of the Legislature "shall

judge the qualifications and elections of its Members . . . ."[4] They argued that the Secretary of State could not reject Berryhill's nomination documents based upon his failure to reside in the Senate district for one year. Berryhill further argued that the one-year residency requirement was unconstitutional.

The superior court ruled that the Legislature's constitutional authority to judge the qualifications and elections of its members did not preclude the court from determining whether the one-year residency requirement "is unconstitutional in a pre-primary election review." The superior court determined that the one-year residency requirement for candidates for legislative office is subject to a strict scrutiny standard of review and, under that standard, a one-year residency requirement failed to serve a compelling governmental interest. The superior court held that the one-year residency requirement violated the equal protection clause of the Fourteenth Amendment to the United States Constitution and denied Fuller's petition for writ of mandate.

## DISCUSSION

Fuller contends the superior court erred in determining that the one-year residency requirement in the California Constitution is unconstitutional under the Fourteenth Amendment to the United States Constitution. According to Fuller, the superior court applied the wrong standard of review.

We do not reach Fuller's equal protection contentions, however, because the Secretary of State and Berryhill assert threshold contentions regarding mootness and jurisdiction. The jurisdictional contention is dispositive.

### I

The Secretary of State and Berryhill contend that Fuller's challenge is moot. They point out that the relief Fuller sought in the superior court was limited to withdrawing Berryhill's nomination documents, but that Fuller's petition was denied, the election was held with Berryhill's name on the ballot, he was elected, and he has been seated by the California State Senate.[5] They argue that Fuller can no longer obtain the relief she requested.

Fuller counters that this case falls within the public interest exception to the doctrine of mootness. Berryhill concedes that the exception may apply. They are both correct.

---

[4] Article IV, section 5, subdivision (a) provides: "Each house shall judge the qualifications and elections of its Members and, by rollcall vote entered in the journal, two thirds of the membership concurring, may expel a Member."

[5] Berryhill's request that we take judicial notice of materials demonstrating that he was elected as the Senator for the 14th State Senate district is granted. (Judicial notice request filed Mar. 28, 2011.)

The public interest exception may apply where the issues presented "are of general public interest and likely to recur" (*Clark v. Burleigh* (1992) 4 Cal.4th 474, 481 [14 Cal.Rptr.2d 455, 841 P.2d 975]), and the exception is often applied in election cases (*Kunde v. Seiler* (2011) 197 Cal.App.4th 518, 527 [128 Cal.Rptr.3d 869]). " 'Under certain conditions, disputes concerning election procedures are properly reviewable by an appellate court even though the particular election in question has already taken place.' [Citation.] Even though the relief requested is no longer available, review may be appropriate if the contentions raised are of general public interest 'and are likely to occur in future elections in a manner evasive of timely appellate review.' [Citations.]" (*Huening v. Eu* (1991) 231 Cal.App.3d 766, 770 [282 Cal.Rptr. 664]; see also *Unger v. Superior Court* (1984) 37 Cal.3d 612, 614 [209 Cal.Rptr. 474, 692 P.2d 238].)

Here, the Secretary of State and Berryhill assert that the Legislature is the sole judge of the qualifications and elections of a candidate for membership in the Legislature even when the qualification challenge is asserted prior to a primary election. This issue is likely to recur in a manner not subject to timely appellate review. The public interest exception to the doctrine of mootness applies in this case.

## II

Accordingly, we turn to the assertion by the Secretary of State and Berryhill that the courts lack jurisdiction to address Fuller's challenge to Berryhill's qualifications, because the Legislature is the sole judge of the qualifications and elections of its members. (Art. IV, § 5, subd. (a).) The Legislature of the State of California filed an amicus curiae brief in support of this contention.

Responding to this jurisdictional argument, Fuller asserts that the trial court had jurisdiction to decide this case because the role of construing constitutional provisions rests with the courts.[6] She cites *Powell v. McCormack* (1969)

---

[6] Fuller further argues that Berryhill and the Secretary of State may not assert the trial court's lack of jurisdiction on appeal because they did not file a cross-appeal. This is incorrect. The issue is cognizable for the purpose of determining whether the judgment should be affirmed on a legal theory other than the one relied on by the superior court. (*Hutchinson v. City of Sacramento* (1993) 17 Cal.App.4th 791, 798 [21 Cal.Rptr.2d 779]; Code Civ. Proc., § 906.) "It is a general rule a respondent who has not appealed from the judgment may not urge error on appeal. [Citation.] A limited exception to this rule is provided by Code of Civil Procedure section 906, which states in pertinent part: 'The respondent . . . may, without appealing from [the] judgment, request the reviewing court to and it may review any of the foregoing [described orders or rulings] for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken.' 'The purpose of the statutory exception is to allow a

395 U.S. 486 [23 L.Ed.2d 491, 89 S.Ct. 1944] (*Powell*) to support her argument, but *Powell* is not on point.

In the *Powell* case, Adam Clayton Powell, Jr., was elected to the United States House of Representatives, but a House resolution prevented him from taking his seat. Powell sued, alleging he could only be excluded if the House found he failed to meet the standing requirements of age, citizenship and residence contained in article I, section 2 of the United States Constitution. He maintained that the House excluded him unconstitutionally because it specifically found he met those requirements. (*Powell, supra*, 395 U.S. at p. 489 [23 L.Ed.2d at p. 498].)

The United States Supreme Court asserted jurisdiction over the claim even though article I, section 5 of the United States Constitution assigns each House of Congress the power to judge the elections and qualifications of its own members. (*Powell, supra*, 395 U.S. at pp. 513–514 [23 L.Ed.2d at p. 512].) The relevant determination was whether the issue was "a 'political question'—that is, a question which is not justiciable in federal court because of the separation of powers provided by the Constitution." (*Id.* at p. 517 [23 L.Ed.2d at p. 514].)

The United States Supreme Court concluded that the issue was justiciable because article I, section 5 of the United States Constitution "is at most a 'textually demonstrable commitment' to Congress to judge only the qualifications expressly set forth in the Constitution." (*Powell, supra*, 395 U.S. at pp. 548, 550 [23 L.Ed.2d at pp. 532, 533].) It did not prevent the United States Supreme Court from determining that the House of Representatives unconstitutionally refused to seat an elected candidate by applying qualifications criteria not set forth in the Constitution. The United States Supreme Court concluded that a determination of Powell's right to sit "would require no more than an interpretation of the Constitution. Such a determination falls within the traditional role accorded courts to interpret the law, and does not involve a 'lack of the respect due [a] coordinate [branch] of government,' nor does it involve an 'initial policy determination of a kind clearly for nonjudicial discretion.' [Citation.] Our system of government requires that federal courts on occasion interpret the Constitution in a manner at variance with the construction given the document by another branch. The alleged conflict that such an adjudication may cause cannot justify the courts' avoiding their constitutional responsibility." (395 U.S. at pp. 548–549 [23 L.Ed.2d at p. 532], fn. omitted.)

respondent to assert a legal theory which may result in affirmance of the judgment.' [Citation.]" (*Hutchinson v. City of Sacramento, supra*, 17 Cal.App.4th at p. 798.)

The United States Supreme Court did not address whether it could interfere with the House's right to judge the constitutionally specified standing qualifications of its members. Indeed, it expressly stated "federal courts might still be barred by the political question doctrine from reviewing the House's factual determination that a member did not meet one of the standing qualifications. This is an issue not presented in this case and we express no view as to its resolution." (*Powell, supra,* 395 U.S. at p. 521, fn. 42 [23 L.Ed.2d at p. 516, fn. 42].)

*Powell* is inapposite because the United States Supreme Court interpreted provisions of the United States Constitution, not the California Constitution, and the case involved grounds for disqualification that were outside the provisions of the Constitution. *Powell* did not involve eligibility based on standing qualifications. Under the circumstances, *Powell* is of no assistance to Fuller.

■ We agree with Fuller that it is the judiciary's role to interpret the law, including the Constitution. But as we will explain, our interpretation leads us to the narrow conclusion that it is not the judiciary's role to judge the qualifications and elections of candidates for membership in the Legislature. This interpretation does not invalidate section 13314, however, because the application of that section is not limited to challenging the qualifications and elections of candidates for membership in the Legislature. Moreover, because our interpretation resolves this case, it is unnecessary to reach any other constitutional questions, even if we might have jurisdiction to do so.

To support their argument that the courts lack jurisdiction in this context, the Secretary of State, Berryhill and the Legislature rely on *Allen v. Lelande* (1912) 164 Cal. 56 [127 P. 643] (*Allen*) and *In re McGee* (1951) 36 Cal.2d 592 [226 P.2d 1] (*McGee*). In *Allen, supra,* 164 Cal. 56, a candidate was nominated for the office of member of the Assembly by direct primary election. But mandamus was sought to compel the county clerk to strike the candidate's name from the general election ballot on the ground that he failed to meet the constitutional residency requirement. (*Id.* at p. 57.) The California Supreme Court denied relief, stating: "The constitution of the state (art. IV, sec. 7) reads as follows: 'Each house shall choose its officers, and judge of the qualifications, elections, and returns of its members.' By that article the assembly is made the exclusive judge of the qualifications of its members. The law providing for an official ballot cannot be held to have changed the intent of the people in adopting that constitutional provision that the assembly should be the sole and exclusive judge of the eligibility of those whose election is properly certified. For this court to undertake to try the question of eligibility and to deprive the candidate of any chance to be elected, would simply be to usurp the jurisdiction of the assembly." (*Ibid.*)

Later, in *McGee, supra,* 36 Cal.2d 592, the California Supreme Court addressed a challenge to a candidate for the Assembly under former section 8600, which set forth the procedure for a challenge to a candidate's nomination. (36 Cal.2d at pp. 593, 598.) Former section 8600 provided in relevant part: "Any candidate at a primary election may contest the right of another candidate to nomination to the same office by filing an affidavit alleging any of the following grounds, that: [¶] (a) The defendant is not eligible to the office in dispute. . . ." (Stats. 1939, ch. 26, p. 267; now see § 16101.)[7]

██　The plaintiff in *McGee* argued that the constitutional power conferred on the Assembly to judge the qualifications and elections of its members did not extend to primary elections. (*McGee, supra,* 36 Cal.2d at p. 595.) But the California Supreme Court disagreed, citing with approval its decision in *Allen.* It reiterated that the California Constitution confers exclusive jurisdiction on the Legislature to judge the qualifications and elections of its members, and observed that the separation of powers doctrine precluded one branch of government from exercising the powers of the other. (36 Cal.2d at pp. 594–595.) "[T]he jurisdiction to judge qualifications and elections of assemblymen lies exclusively with the Assembly and it cannot delegate that duty and it cannot achieve that result indirectly by authorizing the courts to decide contests after primary elections. . . . [P]rimary elections in this state are an integral part of the election process. [Citations.]" (*Id.* at p. 597.)

The California Supreme Court added, "The anomalous results that would follow if a court could make a binding determination under section 8600 of the Elections Code are apparent. If the trial court gave its judgment, either favorable or unfavorable, to the candidate after the primary election but nevertheless the candidate at the ensuing election received the majority of the votes cast, there can be little doubt that he could present his credentials to the legislative house to which he was elected and that body would be required to pass upon any claimed defect in his selection, regardless of the conclusion reached by the court. Such could easily happen as it has in the instant case. . . . For this court to rule upon the question would be futile, for the binding and conclusive decision rests with the Assembly. If the Legislature may, by authorizing court review of primary election contests, prevent a candidate from being on the ballot at the ensuing election for various defects as to the elections or qualifications, it would, in many situations, achieve indirectly what it could not do directly, that is, delegate to the courts its prerogatives under section 7 of article IV of the California Constitution." (*McGee, supra,* 36 Cal.2d at pp. 597–598.)

---

[7] Current section 16101, which is derived from former section 8600, contains identical language. (See Historical and Statutory Notes, 29 West's Ann. Elec. Code (2003 ed.) foll. § 16101, p. 274.)

Under the circumstances, the California Supreme Court held in *McGee, supra*, 36 Cal.2d 592, that former section 8600 could not validly apply to the office of a member of the Assembly (36 Cal.2d at p. 598) and that the Legislature's sole authority to judge the qualifications and elections of its members applied prior to a candidate winning the general election and becoming a member. The Legislature could not statutorily delegate its authority to adjudicate this issue at earlier stages of the election process.

Fuller acknowledges the holdings in *Allen* and *McGee*, but contends their reasoning should not be extended to a qualification challenge occurring before a primary election. We disagree. As the California Supreme Court stated, a primary election is an integral part of the election process. (*McGee, supra*, 36 Cal.2d at p. 597.) A candidate's participation in the primary is no less important than his or her participation in the general election. For the judicial branch "to try the question of eligibility and to deprive the candidate of any chance to be elected, would simply be to usurp the jurisdiction of the [Legislature]." (*Allen, supra*, 164 Cal. at p. 57.) The Legislature cannot "delegate to the courts its prerogatives" under the Constitution to judge the qualifications and elections of its members. (*McGee, supra*, 36 Cal.2d at pp. 597–598.) Using section 13314 to adjudicate the qualifications of a candidate for the Assembly or Senate prior to the primary would be just as invasive as a postprimary, pregeneral election challenge.

Moreover, if section 13314 could be used to judge the qualifications of a candidate for the Legislature prior to a primary election, it could lead to the type of anomalous results anticipated in *McGee*. (*McGee, supra*, 36 Cal.2d at pp. 597–598.) A court could remove a candidate from the ballot before the primary election, possibly depriving the Legislature of the opportunity to judge the qualifications of that person. But a candidate who survives a court challenge and is elected could be judged again by the Legislature, perhaps with a different result. As the California Supreme Court noted in *McGee*, the prior court proceeding could be futile because the binding and conclusive decision rests with the Legislature. (*Id.* at p. 598.) The prospect that separate branches of government could judge the qualifications and elections of candidates for membership in the Legislature at different times with different results is something to be avoided, no matter when the challenge first arises.

■ Nonetheless, Fuller focuses on the word "Members" in article IV, section 5, subdivision (a), arguing that "[e]xtending . . . *McGee* to preelection controversies would necessarily broaden the definition of 'Members' to the whole of the general public before a single form had been filed . . . ." Not so. A challenge under section 13314 cannot occur until the person's name has been placed or is about to be placed on the ballot. (§ 13314, subd. (a)(1).) The person's name cannot be placed on the ballot until he or she has filed a

declaration of candidacy and nomination papers. (§§ 13, 8020, 8040, 8041.) Accordingly, extending *McGee* to preprimary controversies under section 13314 does not encompass "the whole of the general public," only candidates for the state Assembly or Senate.[8]

■ Fuller asserts that if section 13314 is considered "an impermissible encroachment" on the Legislature's authority over the election of its Members, Californians will be denied judicial recourse in "all things related to the election of an Assemblyman or Senator." But our decision does not encompass "all things" related to the election of a member of the Legislature. In any event, our holding is compelled by the separation of powers doctrine. As the California Supreme Court stated in *French v. Senate* (1905) 146 Cal. 604 [80 P. 1031]: "Under our form of government the judicial department has no power to revise even the most arbitrary and unfair action of the legislative department, or of either house thereof, taken in pursuance of the power committed exclusively to that department by the constitution. . . . The legislature is a coordinate department of the state government. By article III of the constitution it is provided that one department of the state shall not exercise the functions of either of the other departments except as in that instrument, expressly directed and permitted. There is no provision authorizing courts to control, direct, supervise, or forbid, the exercise by either house of the power to expel a member [or to adjudicate the qualifications for membership]. These powers are functions of the legislative department, and therefore in the exercise of the power thus committed to it the senate [and assembly] is supreme. An attempt by this court to direct or control the legislature, or either house thereof, in the exercise of the power, would be an attempt to exercise legislative functions, which it is expressly forbidden to do." (*Id.* at pp. 606–607.)

---

[8] Section 305 defines the term "candidate" as follows: "(a) 'Candidate,' for purposes of Section 2184, includes any person who declares in writing, under penalty of perjury that he or she is a candidate, naming the office. [¶] (b) 'Candidate,' as used in Article 1 (commencing with Section 20200) of Chapter 3 of Division 20, means an individual listed on the ballot, or who has qualified to have write-in votes on his or her behalf counted by election officials, for nomination or for election to any elective state or local office, or who receives a contribution or makes an expenditure or gives his or her consent for any other person to receive a contribution or makes an expenditure with a view to bringing about his or her nomination or election to any elective state or local office, whether or not the specific elective office for which he or she will seek nomination or election is known at the time the contribution is received or the expenditure is made. The term "candidate" includes any officeholder who is subject to a recall election. [¶] (c) 'Candidate for public office,' as used in Chapter 5 (commencing with Section 20400) of Division 20, means an individual who has qualified to have his or her name listed on the ballot of any election, or who has qualified to have written votes on his or her behalf counted by election officials, for nomination for, or election to, any state, regional, county, municipal, or district office which is filled at an election."

 We hold that the California Constitution vests in the Senate the sole authority to judge Tom Berryhill's qualifications to serve as a senator for the 14th Senate district.

## DISPOSITION

The judgment is affirmed.

Raye, P. J., and Hull, J., concurred.

A petition for a rehearing was denied March 30, 2012, and appellant's petition for review by the Supreme Court was denied June 13, 2012, S201309.