McGuiness, Acting P.J.**
*480 These appeals arise out of a commercial tenancy dispute. In one appeal, defendant and cross-complainant Vivien Peng challenges a judgment awarding damages for back-due rent to her former landlord, plaintiff and cross-defendant Hong Sang Market, Inc. (Hong Sang). Peng argues that a judgment in a prior unlawful detainer action against her, in which Hong Sang was awarded one month's back-due rent along with *481 possession of the premises, has a res judicata effect and bars any further claims for rent owed to Hong Sang.
In the other appeal, Peng challenges an order awarding attorney fees and costs to *104 Hong Sang.[1] She contends that fees incurred by Hong Sang in defending against a cross-complaint she filed are outside the scope of the parties' contractual attorney fee clause, that fees may not be awarded for work on a motion to strike the cross-complaint as a strategic lawsuit against public participation[2] (SLAPP) in light of this court's earlier decision reversing orders granting the motion and awarding statutory attorney fees, and that some fees appear to have been incurred before the effective date of the attorney fee clause or may be duplicative of fees recovered in the unlawful detainer action.
In the published portion of this opinion, we conclude the unlawful detainer judgment did not preclude Hong Sang from pursuing a separate civil action for back-due rent that accrued in months other than the one month for which damages were awarded in the unlawful detainer action. In the unpublished portion of the opinion, we conclude the trial court erred in awarding Hong Sang attorney fees incurred in defending against Peng's cross-complaint, and we also make an adjustment to the fee award to ensure that Peng receives the benefit of an agreed-upon reduction in the award associated with fees incurred before the effective date of the attorney fee clause. Accordingly, we shall modify the attorney fee award but otherwise affirm the judgment.
FACTUAL AND PROCEDURAL BACKGROUND
Peng's Tenancy
Hong Sang owned a two-unit commercial building in San Francisco. In 2002, Ming Kee Game Birds, Inc. (Ming Kee) leased the entire premises and sublet one of the two units to Peng for a period of ten years.
Ming Kee sued Peng for breach of the sublease in 2004. Peng cross-complained against Ming Kee and ended up securing a judgment against Ming Kee in the sum of $46,545. In 2009, Peng was granted an additional award of attorney fees payable by Ming Kee in the sum of $47,800. She managed to collect $46,500 in partial satisfaction of the outstanding judgment.
In August 2009, while Peng was still attempting to collect her judgment against Ming Kee, she was informed that Hong Sang and Ming Kee had *482 agreed to terminate the master lease. A new tenant, Ming's Poultry, LLC, immediately took possession of the property formerly leased by Ming Kee and continued the same poultry business that had been conducted by Ming Kee. According to Peng, the change in ownership was a fraudulent conveyance designed to prevent her from collecting the unpaid portion of the judgment against Ming Kee through a setoff of rent owed under the sublease. Peng rejected Hong Sang's offer of a lease and demand for rent.
As of September 2009, Peng remained in possession of the premises with Hong Sang's knowledge and consent. By operation of law, she became Hong Sang's tenant at the rental rate of $4,725 per month. Hong Sang filed an unlawful detainer action against Peng in 2009 but ultimately dismissed the case voluntarily in early January 2011, when it acknowledged that the three-day notice to pay rent or quit that was served on Peng in 2009 was arguably defective. Peng did not pay any rent for the premises during the period from September 2009 through February 2011.
*105 In January 2011, Hong Sang served Peng with a written notice of change in terms of the tenancy pursuant to Civil Code section 827 (the section 827 notice). The change in terms became effective on March 1, 2011. Among other things, Hong Sang confirmed that Peng's monthly rent was $4,725. It also amended the terms of the tenancy to include an attorney fee clause, which provides in relevant part that the prevailing party in "any legal action, arbitration or proceeding arising out of or relating to the ... tenancy" shall be entitled to attorney fees and costs "reasonably and actually incurred in the action or proceeding by the prevailing party."
Hong Sang's Unlawful Detainer Lawsuit
Following the effective date of the section 827 notice, Peng paid Hong Sang rent of $4,725 per month in March and April 2011. In May 2011, Peng became delinquent in her rent payments. On May 13, 2011, Hong Sang served Peng with a three-day notice to pay rent or quit as well as a thirty-day notice to quit. The three-day notice to pay rent or quit stated that Peng's rent was delinquent in the amount of $4,725 for the month of May 2011 but also expressly reserved Hong Sang's rights to recover rent for the period before March 1, 2011, in a separate legal action. Peng did not comply with either of the May 2011 notices.
Hong Sang filed an unlawful detainer action against Peng in June 2011. It sought to recover possession of the premises and requested back-due rent in the amount of $4,725, which was the amount demanded for the month of May 2011 in the three-day notice to pay rent or quit. In September 2011, the trial court granted summary judgment in favor of Hong Sang in the unlawful *483 detainer action. The judgment awarded Hong Sang possession of the premises and directed Peng to pay $4,725 in back-due rent. In an amended judgment, the court awarded Hong Sang an additional $21,669 in attorney fees and $845 in costs attributable to the unlawful detainer action. Peng did not appeal the 2011 unlawful detainer judgment and it subsequently became final.
Hong Sang's Breach of Contract Lawsuit and Peng's Cross-complaint
In March 2011, Hong Sang filed an action for breach of contract against Peng in which it sought back-due rent for the period from September 2009 through February 2011.[3] It sought a total of $85,050 as damages for back-due rent plus attorney fees. Hong Sang's breach of contract lawsuit is the subject of this appeal.
Peng filed a cross-complaint against Hong Sang, Ming Kee, and Ming's Poultry, LLC. Peng alleged four causes of action against Hong Sang: interference with contractual relations, breach of the covenant of quiet enjoyment, declaratory relief, and conspiracy. Peng alleged that Hong Sang had falsely advised her that Ming Kee was in default under the master lease and that her sublease was terminated as a result. She claimed that she was forced to hire an attorney as a consequence and incur attorney fees and costs to defend herself against the unlawful detainer action filed by Hong Sang in 2009. In the conspiracy cause of action, Peng alleged that the cross-defendants had conspired to render Ming Kee insolvent and prevent her from collecting her judgment against Ming Kee by offsetting the amount *106 of the judgment against rents owed to Ming Kee. The declaratory relief cause of action sought a declaration of the parties' rights and duties pertaining to the premises occupied by Peng.
Anti-SLAPP Motion and Disposition of Peng's Cross-complaint
Hong Sang filed a special motion under Code of Civil Procedure section 425.16 (anti-SLAPP motion) to strike three of the causes of action in Peng's cross-complaint on the ground they were based on an act in furtherance of its right to free speech-i.e., the filing of an unlawful detainer action. The anti-SLAPP motion did not seek to strike the declaratory relief cause of action. The trial court granted Hong Sang's special motion to strike the challenged causes of action, reasoning that they arose at least in part from *484 protected activity. The court awarded Hong Sang attorney fees of $7,834.75 and costs of $3,953 as the prevailing moving party on the special motion to strike. ( Code Civ. Proc., § 425.16, subd. (c)(1).) Peng appealed the court's orders granting Hong Sang's anti-SLAPP motion and awarding fees and costs under the anti-SLAPP statute in appeal numbers A133044 and A134394, which we consolidated for purposes of decision.
On appeal, we reversed the trial court's order granting Hong Sang's anti-SLAPP motion. We concluded that the challenged causes of action did not arise from protected activity. We did not reach the question of whether Peng had demonstrated a probability of prevailing on the merits of her causes of action. The reversal required that we also vacate the award of attorney fees and costs because there was no longer a statutory basis for the award.
While the court's anti-SLAPP order was on appeal, Peng filed an amended cross-complaint containing a single cause of action for declaratory relief against Hong Sang. In 2012, the court granted a demurrer without leave to amend as to the declaratory relief cause of action. The court noted that the controversy alleged in the declaratory relief cause of action no longer existed. Peng did not challenge the court's order dismissing the declaratory relief cause of action.
After this court issued the remittitur in the appeals challenging the court's anti-SLAPP orders, Peng filed a second amended cross-complaint that re-alleged the causes of action against Hong Sang for interference with contractual relations, breach of the covenant of quiet enjoyment, and conspiracy. Peng subsequently requested that the court dismiss her cross-complaint. The court entered judgment in favor of Hong Sang on the cross-complaint in October 2013.
Court Trial on Breach of Contract Cause of Action
The single cause of action in Hong Sang's operative complaint for breach of contract proceeded to trial in June 2012. As noted, Hong Sang sought a total of $85,050 from Peng for back-due rent covering the period from September 2009 through February 2011.
Before trial, Peng filed a motion for judgment seeking to dismiss the breach of contract cause of action on the ground that it was barred by the doctrines of res judicata and collateral estoppel. She argued that the September 2011 unlawful detainer judgment awarding $4,725 as back-due rent for the month of May 2011 has a res judicata effect that precludes a separate *485 lawsuit seeking recovery of rent owed for the period from September 2009 through February 2011. Peng argued that Hong Sang's claim for back-due rent gave rise to a single cause of action that could not be split between two different lawsuits. She *107 acknowledged she had not pleaded res judicata or collateral estoppel as affirmative defenses but argued there was no opportunity to plead those defenses at the time she answered the operative complaint in August 2011 because the September 2011 unlawful detainer judgment had not yet been entered at that time. Over Hong Sang's objection, the court allowed Peng to present her res judicata and collateral estoppel defenses.
The matter was tried before the court on stipulated facts. In essence, Peng agreed that she owed Hong Sang rent of $4,725 per month for the period from September 2009 through February 2011 if the court rejected her res judicata defense. The court trial therefore turned solely upon the legal question of whether the unlawful detainer judgment has a res judicata or collateral estoppel effect that precludes Hong Sang from recovering additional amounts of back-due rent beyond the monthly rent for May 2011 that was awarded in the unlawful detainer action.
The trial court ruled in favor of Hong Sang and awarded damages of $85,050 plus prejudgment interest of $18,075.39. The court rejected Peng's res judicata claim, reasoning that claim preclusion does not apply to matters that could not have been tried in the first action. As the court explained in its statement of decision, because Hong Sang was limited by statute in the amount of rent it could recover in an unlawful detainer action, it had no choice but to file two separate actions to achieve both the eviction of Peng and the payment in full of back-due rent.
Following entry of judgment in favor of Hong Sang, Peng timely appealed the judgment in appeal number A140653.
Award of Attorney Fees and Costs
Hong Sang moved for an award of attorney fees and costs. It sought $118,096.33 as contractual attorney fees on the ground that the express terms of the parties' rental agreement, as modified by the section 827 notice, permitted the prevailing party in an action arising out of the tenancy to recover reasonable attorney fees and costs. Hong Sang also sought costs totaling $2,271.95.
Of the amount sought as attorney fees, $56,956.33 was requested for work performed by the law firm of Steven Adair MacDonald & Associates, P.C. (the Steven Adair firm), and $61,140 was requested for work performed by the law firm of Bradley Curley Asiano Barrabee Abel & Kowalski (the *486 Bradley Curley firm). The Steven Adair firm primarily worked on the complaint and Hong Sang's claim for back-due rent. The Bradley Curley firm is identified as insurance defense counsel that was retained to defend Hong Sang against Peng's cross-complaint. The Bradley Curley firm was thus involved in litigating the anti-SLAPP motion and the subsequent appeal of the order granting the anti-SLAPP motion.
Peng opposed the motion for attorney fees and costs. With respect to fees claimed by the Bradley Curley firm, which defended against the cross-complaint, Peng argued that the acts giving rise to the cross-complaint occurred well before the effective date of the attorney fee clause contained in the section 827 notice. Peng also pointed out that a significant part of the work done by the Bradley Curley firm related to the anti-SLAPP motion and subsequent appeal. According to Peng, because the anti-SLAPP order and associated statutory fee award were overturned by this court, Hong Sang should not recover the fees it incurred for that work on the basis of a contractual attorney fee provision. Accordingly, she asked that the court deny the request for fees billed by the Bradley Curley firm in its entirety.
*108 Peng also challenged the fee request submitted with respect to work performed by the Steven Adair firm but only sought to reduce a portion of the fees incurred. First, she claimed that a portion of the fees should be disallowed because they were incurred before the effective date of the attorney fee clause. Second, she asserted that $528.50 should be deducted from any fee award because the tasks associated with those fees related to the unlawful detainer action, for which Hong Sang had already received an attorney fee award. Finally, she disputed a portion of the claimed fees that were associated with the anti-SLAPP motion. Altogether, Peng sought to reduce the fees claimed by the Steven Adair firm by at least $8,565.45.
At the hearing on the attorney fees motion, the court agreed to reduce the fee award by the amount attributable to work performed before the effective date of the attorney fee clause. The parties agreed that approximately $5,000 of the fees fell into that category. At the request of Hong Sang's counsel, the court divided the $5,000 reduction evenly between the Steven Adair firm and the Bradley Curley firm, with the fees for each being reduced by $2,500. Aside from the $5,000 reduction in the fee award for work performed before the effective date of the attorney fee clause, the court otherwise rejected Peng's arguments seeking to reduce or deny the claimed fees. Accordingly, the court awarded Hong Sang its requested costs of $2,271.95 plus contractual attorney fees totaling $113,096.33, composed of $58,640 in fees for work performed by the Bradley Curley firm and $54,456.33 in fees for work performed by the Steven Adair firm.
*487 The court entered an amended judgment that added the attorney fees and cost award to the judgment for damages and prejudgment interest. Altogether, the amended judgment requires Peng to pay $218,493.67 to Hong Sang. Peng timely appealed the amended judgment in appeal number A141640.
DISCUSSION
I. Res Judicata Effect of Unlawful Detainer Judgment
Peng contends that the September 2011 unlawful detainer judgment in which Hong Sang was awarded one month's back-due rent has a res judicata or collateral estoppel effect that bars any further actions for back-due rent. Although she acknowledges that Civil Code section 1952, subdivision (b) (hereafter section 1952(b) ), expressly permits a landlord to bring a separate action for back-due rent after bringing an unlawful detainer action to recover possession of the premises, she nonetheless argues that a landlord may not split a claim for rent between an unlawful detainer action and a subsequent civil action. Because the relevant facts are undisputed and the application of res judicata principles presents a question of law, we apply de novo review in assessing Peng's claim of error. ( Noble v. Draper (2008) 160 Cal.App.4th 1, 10, 73 Cal.Rptr.3d 3.)
A. Waiver as a Result of Delay in Asserting Affirmative Defense
Before addressing the merits of Peng's claim, we first consider Hong Sang's contention that Peng waived any affirmative defenses premised upon res judicata principles by failing to raise them in her original answer and by not being diligent in seeking to amend her answer. For her part, Peng argues that Hong Sang's challenge to the order authorizing the amendment is not properly before this court because Hong Sang did not file a cross-appeal, and even if it had, Hong Sang has failed to establish that the court abused its discretion in permitting the amendment.
*109 As an initial matter, Peng is mistaken in arguing that Hong Sang was required to file a cross-appeal in order to raise this issue. An intermediate ruling that necessarily affects a final judgment is properly within the scope of our review of the judgment without the need for the party challenging that intermediate ruling to file its own cross-appeal. (See Code Civ. Proc., § 906.) The purpose of this statutory exception to the general rule requiring an aggrieved party to file its own appeal is to allow a respondent to assert a legal theory that would result in affirming a judgment even though the trial court did not rely on that theory. ( Fuller v. Bowen (2012) 203 Cal.App.4th 1476, 1483, fn. 6, 138 Cal.Rptr.3d 394.) In this case, because the trial turned solely on the viability of Peng's res judicata defense, we would necessarily affirm *488 the judgment if we were to conclude the court erred in allowing Peng to amend her answer to include such a defense. Therefore, Hong Sang's challenge to the intermediate ruling allowing the amendment is properly before us even though it did not file its own cross-appeal from the final judgment.
Leave to amend a pleading, including an answer, is entrusted to the sound discretion of the trial court. (See Garcia v. Roberts (2009) 173 Cal.App.4th 900, 909, 93 Cal.Rptr.3d 286 ; Code Civ. Proc., § 473, subd. (a)(1) [court has discretion "upon any terms as may be just" to allow an amendment to any pleading].) We will not disturb the trial court's exercise of discretion unless there is a clear showing of abuse. ( Garcia v. Roberts, at p. 909, 93 Cal.Rptr.3d 286.) "[A]bsent a showing of prejudice to the adverse party, the rule of great liberality in allowing amendment of pleadings will prevail." ( Board of Trustees of Leland Stanford Jr. University v. Superior Court (2007) 149 Cal.App.4th 1154, 1163, 57 Cal.Rptr.3d 755.)
As support for its claim that the court abused its discretion in allowing Peng to amend her answer, Hong Sang contends she presented no evidence to excuse her extreme lack of diligence in seeking to amend the answer. It also argues that it suffered prejudice because it was required to address a new and complex defense "without the benefit of either research or pretrial discovery."
We are not persuaded that the court exceeded the scope of its discretion in allowing the amendment. As a practical matter, Peng could not have asserted a res judicata defense when she first filed her answer because there was no judgment at the time in the unlawful detainer action. (See Solari v. Atlas-Universal Service, Inc. (1963) 215 Cal.App.2d 587, 592, 30 Cal.Rptr. 407 [res judicata defense must be pleaded when facts supporting it arise].) And, while Peng did not seek to raise a res judicata defense until over 10 months later, when the matter was set for trial, we fail to see how Hong Sang was prejudiced by any delay in Peng's pursuit of a res judicata defense. The issue was purely legal in nature. Indeed, the parties agreed on stipulated facts for purposes of the court trial. It is unclear what, if any, discovery Hong Sang might have conducted that would bear upon a res judicata defense. Although Hong Sang claims it was compelled to respond to a complex defense without the benefit of research, our review of the record reveals that Hong Sang was afforded an opportunity to respond to the res judicata defense both in its trial brief and in an opposition to an in limine motion. Under the circumstances, we discern no abuse of discretion in permitting Peng to assert a res judicata defense on the eve of trial. Accordingly, we turn to the merits of Peng's defense.
*489 B. Res Judicata Principles
"As generally understood, '[t]he doctrine of res judicata gives certain con *110 clusive effect to a former judgment in subsequent litigation involving the same controversy.' " ( People v. Barragan (2004) 32 Cal.4th 236, 252, 9 Cal.Rptr.3d 76, 83 P.3d 480.) The res judicata doctrine promotes judicial economy by precluding piecemeal litigation that may occur if a single cause of action is split into more than one lawsuit or if a particular issue has already been decided in an earlier lawsuit. ( Mycogen Corp. v. Monsanto Co. (2002) 28 Cal.4th 888, 897, 123 Cal.Rptr.2d 432, 51 P.3d 297.) " 'In its primary aspect,' commonly known as claim preclusion, it 'operates as a bar to the maintenance of a second suit between the same parties on the same cause of action. [Citation.]' 'In its secondary aspect,' commonly known as collateral estoppel, '[t]he prior judgment ... "operates" ' in 'a second suit ... based on a different cause of action ... "as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action." ' " ( People v. Barragan, supra, 32 Cal.4th at pp. 252-253, 9 Cal.Rptr.3d 76, 83 P.3d 480.)
Although the res judicata doctrine encompasses both claim and issue preclusion, the term "res judicata" has sometimes been used by California courts to denote claim preclusion whereas the term "collateral estoppel" has denoted issue preclusion. (See Mycogen Corp. v. Monsanto Co., supra, 28 Cal.4th at p. 896, fn. 7, 123 Cal.Rptr.2d 432, 51 P.3d 297 ; Lucido v. Superior Court (1990) 51 Cal.3d 335, 341, fn. 3, 272 Cal.Rptr. 767, 795 P.2d 1223 ; see also DKN Holdings LLC v. Faerber (2015) 61 Cal.4th 813, 824, 189 Cal.Rptr.3d 809, 352 P.3d 378.) We shall follow the lead of our Supreme Court in using the term "res judicata" to signify the broader doctrine, including both its primary and secondary aspects, while using "the terms 'claim preclusion' to describe the primary aspect of the res judicata doctrine and 'issue preclusion' to encompass the notion of collateral estoppel." ( DKN Holdings LLC v. Faerber, supra, at p. 824, 189 Cal.Rptr.3d 809, 352 P.3d 378.)
" 'The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding.' " ( People v. Barragan, supra, 32 Cal.4th at p. 253, 9 Cal.Rptr.3d 76, 83 P.3d 480.) A party who asserts claim or issue preclusion as a bar to further litigation bears the burden of proving that the requirements of the doctrine are satisfied. ( Vella v. Hudgins (1977) 20 Cal.3d 251, 257, 142 Cal.Rptr. 414, 572 P.2d 28.)
*490 California courts apply the "primary rights" theory in assessing whether two proceedings involve identical causes of action. (See Mycogen Corp. v. Monsanto Co., supra, 28 Cal.4th at p. 904, 123 Cal.Rptr.2d 432, 51 P.3d 297.) "The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based. [Citation.] The scope of the primary right therefore depends on how the injury is defined. A cause of action comprises the plaintiff's primary right, the defendant's corresponding primary duty, and the defendant's wrongful act in breach of that duty." ( Federation of Hillside & Canyon Assns. v. City of Los Angeles (2004) 126 Cal.App.4th 1180, 1202, 24 Cal.Rptr.3d 543.) A primary right is distinct from the legal theory on which liability is premised or the remedies that may be sought. Thus, while a primary right may support multiple theories of liability or *111 various forms of relief, it gives rise to a single, indivisible cause of action for purposes of applying claim preclusion principles. ( Mycogen Corp. v. Monsanto Co., supra, at p. 904, 123 Cal.Rptr.2d 432, 51 P.3d 297.) For that reason, the claim preclusion aspect of the res judicata doctrine generally bars a second action brought solely to recover greater or different damages. ( Villacres v. ABM Industries Inc. (2010) 189 Cal.App.4th 562, 585, 117 Cal.Rptr.3d 398.) The rule prohibiting a plaintiff from splitting a cause of action into several suits is likewise an application of claim preclusion principles. ( Allstate Ins. Co. v. Mel Rapton, Inc. (2000) 77 Cal.App.4th 901, 907, 92 Cal.Rptr.2d 151.)
C. Splitting a Cause of Action for Back-Due Rent Between an Unlawful Detainer Action and an Ordinary Civil Action
It is undisputed that two of the three requisites for the application of claim preclusion are present here. The unlawful detainer proceeding resulted in a final judgment on the merits and the parties in this action are identical to the parties in the unlawful detainer action. The parties' dispute turns on whether the claim raised in this breach of contract action for back-due rent is identical to the claim raised in the unlawful detainer action, in which Hong Sang sought and was awarded one month's rent. Peng asserts that the claims are identical and amount to Hong Sang splitting a single cause of action for accrued but unpaid rent into two different lawsuits.
At first blush, Peng's argument appears meritorious. After all, Hong Sang sought accrued and unpaid rent in two different actions, albeit for different time periods. But the argument proves to be meritless when one takes into account that the back-due rent cause of action was "split" between two very different legal proceedings-a summary unlawful detainer action and an ordinary civil lawsuit. An unlawful detainer action is a summary proceeding designed to adjudicate the right of immediate possession; the only claims that are cognizable in such a proceeding are those bearing directly on the immediate right of possession. ( *491 Vella v. Hudgins, supra, 20 Cal.3d at p. 255, 142 Cal.Rptr. 414, 572 P.2d 28 ; see generally Code Civ. Proc., § 1159 et seq. ) Cross-complaints and affirmative defenses are permissible only to the extent that they would, if meritorious, preclude a court from removing a tenant from the premises. ( Vella v. Hudgins, supra, at p. 255, 142 Cal.Rptr. 414, 572 P.2d 28.) It is for this reason that "a judgment in an unlawful detainer usually has very limited res judicata effect and will not prevent one who is dispossessed from bringing a subsequent action to resolve questions of title [citations] or to adjudicate other legal and equitable claims between the parties...." ( Ibid. )
An unlawful detainer judgment has a limited res judicata effect because the claim preclusion aspect of the res judicata doctrine applies only to matters that were raised or could have been raised in the earlier action on matters that were litigated or litigable.[4] (See Villacres v. ABM Industries Inc., supra, 189 Cal.App.4th at p. 576, 117 Cal.Rptr.3d 398 ; Amin v. Khazindar (2003) 112 Cal.App.4th 582, 589-590, 5 Cal.Rptr.3d 224.) A necessary *112 corollary to this statement of the law relating to claim preclusion is that a prior judgment generally does not bar a subsequent claim if the matter could not have been raised or litigated in the earlier action. Thus, in a situation in which a " 'court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground ..., then a second action in a competent court presenting the omitted theory or ground should be held not precluded.' " ( Merry v. Coast Community College Dist. (1979) 97 Cal.App.3d 214, 229, 158 Cal.Rptr. 603 ; see, e.g., Harris v. Grimes (2002) 104 Cal.App.4th 180, 188, 127 Cal.Rptr.2d 791 [where federal court faced with federal civil rights claim declined to exercise pendent jurisdiction over plaintiff's state law claims, plaintiff was not precluded from pursuing state law claims in state court].) Because the scope of an unlawful detainer proceeding is limited, the preclusive effect of an unlawful detainer judgment is likewise limited.
A cause of action for back-due rent falls into the category of claims that a court has limited power to decide in an unlawful detainer proceeding. (See Friedman et al., Cal. Practice Guide: Landlord-Tenant (2017) § 9:416.1, p. 9-144 (hereafter Friedman).) If a landlord proceeds by way of a three-day notice to "pay or quit" when the tenant is in default in rent payments, the landlord is limited to recovering rent that accrued within one year of the notice. ( Code Civ. Proc., § 1161, subd. (2) ; see Friedman, supra , § 9:416.1, p. 9-144.) The amount of back-due rent is generally limited to that demanded in the three-day notice. (Friedman, supra, § 9:312, p. 9-90.) A landlord proceeding by way of a three-day notice for nonpayment of rent *492 may also recover damages for rental losses occurring after the period covered by the three-day notice expires. (Friedman, supra, § 8.58.2, pp. 8-25 to 8-26; Code Civ. Proc., § 1174, subd. (b).) If a landlord proceeds by way of a 30-day notice of termination of a rental agreement, the landlord may not recover back-due rent but may seek damages for the reasonable rental value of the premises from the termination of the tenancy until entry of the unlawful detainer judgment. (Friedman, supra, §§ 8:58 & 8:63, pp. 8-24 & 8-27; Code Civ. Proc., § 1174, subd. (b) ; Hudec v. Robertson (1989) 210 Cal.App.3d 1156, 1163, 258 Cal.Rptr. 868 ; Saberi v. Bakhtiari (1985) 169 Cal.App.3d 509, 513-515, 215 Cal.Rptr. 359.)
By contrast, the right to recover back-due rent is not so limited in an ordinary civil action premised upon section 1951.2 of the Civil Code. A landlord can generally recover up to four years of back-due rent if the claim is based upon a written lease agreement. ( Code Civ. Proc., § 337.2 [four-year statute of limitations for breach of written lease].) Because a court has no jurisdiction to award more than one year's back-due rent in an unlawful detainer action, res judicata principles suggest that an unlawful detainer judgment should not preclude a separate, civil action for back-due rent that is not recoverable in an unlawful detainer proceeding.
The Legislature has gone further in limiting the res judicata effect of an unlawful detainer judgment in section 1952(b). The statute provides, with an exception not relevant here,[5] that a lessor who brings an unlawful detainer action is not precluded from bringing a separate action to recover rent under *113 Civil Code section 1951.2, provided that the lessor may not recover damages in the subsequent civil action "for any detriment for which a claim for damages was made and determined on the merits in the previous action."[6] ( § 1952(b).) This statutory provision modifies the general rule that a judgment in an earlier action precludes a party from raising issues in later litigation that could have been raised in the earlier action. (Cf. Villacres v. ABM Industries Inc., supra, 189 Cal.App.4th at p. 576, 117 Cal.Rptr.3d 398.) Section 1952(b) permits a lessor to pursue an action for damages in subsequent civil litigation even though the lessor could have sought those same damages in a prior unlawful detainer *493 action, as long as the damages claim for any particular detriment was not actually determined on the merits in the unlawful detainer action.
This principle is demonstrated in Northrop Corp. v. Chaparral Energy, Inc. (1985) 168 Cal.App.3d 725, 727, 214 Cal.Rptr. 173 ( Northrop ), in which a lessor filed an unlawful detainer action and sought, in addition to the restitution of the premises, unpaid rent plus reasonable rental value until the lessee vacated the premises. The lessor chose to litigate only the issue of possession in the unlawful detainer action and reserve its right to recover unpaid rent and reasonable rental value in a separate civil action. ( Id. at p. 728, 214 Cal.Rptr. 173.) The trial court entered a judgment awarding possession to the lessor but also ruling that the lessor took nothing by way of its claims for unpaid rent and rental value damages. ( Id. at pp. 728-729, 214 Cal.Rptr. 173.) On appeal, the lessor objected that the judgment erroneously implied the court had determined issues related to unpaid or lost rent; the lessor complained that the lessee might attempt to use the judgment to preclude the recovery of rent damages in the separate civil action. ( Id. at p. 729, 214 Cal.Rptr. 173.) The Court of Appeal agreed with the lessor and modified the judgment to specify that the question of unpaid rent and reasonable rental value was specifically reserved to the separate civil action. ( Id. at p. 730, 214 Cal.Rptr. 173.) The appellate court relied upon section 1952(b), which "explicitly recognize[s] the propriety of obtaining possession by unlawful detainer and leaving monetary damages to subsequent litigation." ( Id. at p. 729, 214 Cal.Rptr. 173, fn. omitted.) According to the court, although the unlawful detainer statutes authorize a lessor to recover rent damages in an unlawful detainer action, "nothing in the statutes requires the landlord to litigate his rental claims in the unlawful detainer rather than a separate civil proceeding, as authorized by Civil Code section 1951.2." ( Ibid. ) Thus, even where the lessor actually sought damages for lost rent and rental value loss, it was not precluded from pursuing those same claims in a separate civil action as long as the claims were not actually determined on the merits in the unlawful detainer action.
Northrop confirms that a lessor may choose to pursue rent damages in a separate civil suit even though it is authorized to seek rent damages in a prior unlawful detainer action, but its ruling does *114 not answer the question presented here. Specifically, may a lessor pursue a claim for some portion of back-due rent in an unlawful detainer action and still seek other claims for back-due rent in a separate civil action? The answer can be found by focusing on language in section 1952(b) that limits a lessor's right to recover damages in a subsequent civil action for "any detriment" for which damages were sought and finally determined on the merits in a prior unlawful detainer action. If "any detriment" is interpreted to mean the entire category of damages relating to back-due rent, then fully litigating a claim for some portion of back-due rent in an unlawful detainer action would bar a lessor from pursuing any further claims for back-due rent in a subsequent civil *494 action. But if "any detriment" denotes discrete, monthly (or other periodic) claims for rent, then the mere fact a claim for back-due rent was finally determined on the merits in an unlawful detainer action would not preclude a lessor from pursuing additional back-due rent in a separate civil action. As we explain, the latter interpretation of the term "any detriment" is the more plausible one.
We are guided by familiar principles in construing statutory language. Our primary goal is to "ascertain legislative intent so as to effectuate the purpose of the law. [Citation.] To do so, we first examine the language of the statute, giving the words their ordinary, commonsense meaning and according significance to all words used, if possible. [Citations.] 'The statute's words generally provide the most reliable indicator of legislative intent; if they are clear and unambiguous, "[t]here is no need for judicial construction and a court may not indulge in it." [Citations.] However, where 'the statutory language is ambiguous on its face or is shown to have a latent ambiguity such that it does not provide a definitive answer, we may resort to extrinsic sources to determine legislative intent.' " ( Guillen v. Schwarzenegger (2007) 147 Cal.App.4th 929, 938-939, 55 Cal.Rptr.3d 87.)
It is reasonable to conclude the Legislature did not intend the term "any detriment" to refer to the entire category of claims for back-due rent. Such an interpretation would preclude a lessor from pursuing any further back-due rent claims in a separate civil action if any back-due rent claims were finally determined on the merits in an unlawful detainer action. But that interpretation is directly at odds with the California Law Revision Commission's expressly stated view at the time subdivision (b) was added to Civil Code section 1952 that damages may be recovered in both an unlawful detainer action and a civil action, as long as they are not duplicative: " 'The lessor's right to recover damages for loss of the benefits of the lease should be independent of his right to bring an action for unlawful detainer to recover the possession of the property. The damages should be recoverable in a separate action in addition to any damages recovered as part of the unlawful detainer action.' " ( Walt v. Superior Court (1992) 8 Cal.App.4th 1667, 1678, 11 Cal.Rptr.2d 278, citing Recommendation Relating to Real Property (1969) 9 Cal. Law Revision Com. Rep. at p. 162.) The California Law Revision Commission clarified that, " '[o]f course, the lessor should not be entitled to recover twice for the same items of damages.' " (Ibid. ) This explanation of the Legislature's intent is inconsistent with the notion that recovery of back-due rent in an unlawful detainer action bars further, non-duplicative claims for additional back-due rent in an ordinary civil action.
*495 Furthermore, interpreting the term "any detriment" to encompass the entire category of claims for back-due rent would lead to an absurd result. (See *115 Horwich v. Superior Court (1999) 21 Cal.4th 272, 280, 87 Cal.Rptr.2d 222, 980 P.2d 927 [statutes should be interpreted to avoid anomalous or absurd consequences].) Ordinarily, res judicata principles would not bar a subsequent claim if the matter could not have been raised in the earlier action. (See Villacres v. ABM Industries Inc., supra, 189 Cal.App.4th at p. 576, 117 Cal.Rptr.3d 398.) As applied to the case of back-due rent, the res judicata doctrine would suggest that a landlord could seek back-due rent in a subsequent civil action even if the landlord had recovered back-due rent in a prior unlawful detainer action, as long as the back-due rent sought in the civil action was outside the limited scope of relief afforded in a summary unlawful detainer proceeding. But interpreting "any detriment" in section 1952(b) to encompass all back-due rent claims would have the consequence of barring all such claims in a subsequent civil action if any back-due rent was recovered in the unlawful detainer action, even if the back-due rent sought in the civil action could not have been pursued in an unlawful detainer action. In other words, this interpretation of section 1952(b) gives greater preclusive effect to an unlawful detainer judgment than would be the case under res judicata principles. This result is anomalous because the plain intent of section 1952(b) is to limit the res judicata effect of a prior unlawful detainer action.
Peng nonetheless urges that case law supports her contention that res judicata principles preclude a landlord from splitting a cause of action for back-due rent between and unlawful detainer action and an ordinary civil action. The cases she relies upon are inapposite. She claims that McCaffrey v. Wiley (1951) 103 Cal.App.2d 621, 230 P.2d 152 is "most similar" to this case. In McCaffrey, a plaintiff filed an action to eject a tenant and was awarded possession. The plaintiff then filed a second action seeking damages for the wrongful withholding of the property until judgment was rendered in the ejectment action. ( Id. at p. 622, 230 P.2d 152.) The Court of Appeal held that the second action seeking monetary damages was barred because it rested on the same primary right adjudicated in the first action-i.e., the right of the plaintiff to possess the land. ( Id. at pp. 624-625, 230 P.2d 152.) As this brief factual recitation demonstrates, McCaffrey is not similar to this case. It did not involve a summary unlawful detainer action followed by an ordinary civil action. Instead, McCaffrey concerned an attempt to split a cause of action arising from a single primary right between two ordinary civil actions. Further, insofar as McCaffrey stands for the principle that the right of possession and damages for wrongful possession must be litigated in a single action, it is directly at odds with statutory and case law specifying that recovery of *496 possession in an unlawful detainer action does not bar a separate action for damages. ( Code Civ. Proc., § 1174.5 [unlawful detainer judgment does not relieve lessee of liability for rental damages]; see Northrop, supra , 168 Cal.App.3d at p. 729, 214 Cal.Rptr. 173.)
Likewise, Peng's reliance on Lekse v. Municipal Court (1982) 138 Cal.App.3d 188, 187 Cal.Rptr. 698 is unavailing. In Lekse, landlords sued a tenant for four months of back-due rent but split their demand into two separate smalls claims lawsuits each seeking recovery of two months' rent in order to fall under the jurisdictional amount allowed in small claims actions. The landlords secured judgments for back-due rent in both actions. ( Id. at p. 190, 187 Cal.Rptr. 698.) The appellate court declared one of the two judgments void, holding that there is but one cause of action for all past rent due and owing at the time a complaint is filed.
*116 ( Id. at pp. 194-195, 187 Cal.Rptr. 698.) Lekse has little bearing upon the issue before us. The resolution of Peng's claim turns on the preclusive effect given to an unlawful detainer judgment in light of res judicata principles and the statutory scheme governing unlawful detainer actions. Lekse did not involve an unlawful detainer action and consequently provides no insight into whether a landlord may split a rent cause of action between an unlawful detainer action and an ordinary civil action.
Peng also purports to rely on Northrop for the principle that a landlord may not split a claim for back-due rent between an unlawful detainer action and an ordinary civil action. She claims that if Hong Sang had wanted to preserve its claim for back-due rent, it should have "followed the procedure" in Northrop and sought possession only in the unlawful detainer action and pursued all claims for back-due rent in a separate civil lawsuit. But Northrop merely stands for the proposition that nothing requires a landlord to pursue damages for rent claims in an unlawful detainer action. ( Northrop, supra, 168 Cal.App.3d at p. 729, 214 Cal.Rptr. 173.) It does not suggest a landlord must litigate back-due rent claims in either an unlawful detainer action or a subsequent civil action. Further, Hong Sang did not have the option to forego all of its claims for back-due rent in the unlawful detainer action. Because Hong Sang's unlawful detainer was based on the nonpayment of rent, it had to prove that Peng failed to pay the rent demanded in the three-day notice in order to recover possession. The amount of rent due in such a case is assessed as damages. ( Code Civ. Proc., § 1174, subd. (b).) It would make no sense to forego such damages when they are necessarily proven to establish the basis for the unlawful detainer. As the trial court observed, Hong Sang had no choice but to split its claims for back-due rent between the unlawful detainer action and the ordinary civil action in order to achieve all of the relief it *497 sought-recovery of possession, an award of the back-due rent demanded in the three-day notice, and an award of all other back-due rent not otherwise recoverable in an unlawful detainer action.
Accordingly, we hold that an unlawful detainer judgment awarding back-due rent does not preclude a lessor from seeking additional back-due rent in an ordinary civil action. However, the lessor is precluded from recovering back-due rent associated with a particular time period in the subsequent civil action if such a claim was actually determined on the merits in the unlawful detainer action. Thus, the lessor is not only precluded from recovering twice for the same items of damages but also may not renew a claim for back-due rent associated with a particular time period if that periodic claim was denied on the merits in the unlawful detainer action.
Because the damages for back-due rent in the unlawful detainer judgment here were limited to the month of May 2011, Hong Sang was not precluded from seeking additional back-due rent covering the period from September 2009 through February 2011 in its breach of contract action. Therefore, the trial court did not err in rejecting Peng's claim that Hong Sang was precluded from seeking additional back-due rent in its civil action after recovering one month's back-due rent in the unlawful detainer action.[7]
*117 II. Attorney Fees***
DISPOSITION
The amended judgment is reversed to the extent it awards a total of $113,096.33 in attorney fees to Hong Sang. The case is remanded to the trial court with directions to enter a new amended judgment awarding Hong Sang *498 attorney fees totaling $49,912.83. In all other respects, the amended judgment is affirmed.
Hong Sang shall be entitled to recover its costs on appeal.
We concur:
Pollak, J.
Siggins, J.

Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

On the court's own motion, we consolidate the appeals in case numbers A140653 and A141640 for purposes of decision.

Code Civ. Proc., § 425.16.

Although Hong Sang's breach of contract action was filed before the unlawful detainer action, the judgment in the unlawful detainer action was entered before the judgment in the breach of contract action.

Issue preclusion, or collateral estoppel, does not apply unless the issue was actually litigated and necessarily decided in the former proceeding. (Hernandez v. City of Pomona (2009) 46 Cal.4th 501, 511, 94 Cal.Rptr.3d 1, 207 P.3d 506.) Consequently, it is not enough that the issue could have been litigated in the earlier action for purposes of applying issue preclusion.

The exception applies when, during the course of an unlawful detainer proceeding, possession no longer becomes an issue and the action is converted to an ordinary civil action in which the lessor may seek relief not otherwise recoverable in an unlawful detainer proceeding. (See Civ. Code, §§ 1952(b), 1952.3, subd. (a).)

Section 1952(b) provides as follows: "Unless the lessor amends the complaint as provided in paragraph (1) of subdivision (a) of Section 1952.3 to state a claim for damages not recoverable in the unlawful detainer proceeding, the bringing of an action under the provisions of Chapter 4 (commencing with Section 1159 ) of Title 3 of Part 3 of the Code of Civil Procedure does not affect the lessor's right to bring a separate action for relief under Sections 1951.2, 1951.5, and 1951.8, but no damages shall be recovered in the subsequent action for any detriment for which a claim for damages was made and determined on the merits in the previous action."

Peng contends that, even if claim preclusion principles do not bar Hong Sang's back-due rent cause of action, it is barred by the application of issue preclusion principles. The claim is meritless. In the unlawful detainer action, the parties did not litigate the issues bearing upon whether Hong Sang was entitled to back-due rent for the period from September 2009 through February 2011. Indeed, the court's order granting summary judgment in the unlawful detainer action fails to even mention that Peng did not pay rent during that period. There was consequently no determination that Peng owed back-due rent for any period other than the month of May 2011. Because issue preclusion does not apply unless the issue was actually litigated and necessarily decided in the former proceeding, that principle does not foreclose Hong Sang's cause of action for additional back-due rent. (See Hernandez v. City of Pomona, supra, 46 Cal.4th at p. 511, 94 Cal.Rptr.3d 1, 207 P.3d 506.)

See footnote *, ante .