Filed 9/27/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MUSKAN FOOD & FUEL, INC., | F079342 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 18CECG00634) |
| CITY OF FRESNO, | **OPINION** |
| Defendant and Respondent; | |
| KULVIR SEKHON et al., | |
| Real Parties in Interest and Appellants. | |

APPEAL from a judgment of the Superior Court of Fresno County. Rosemary T. McGuire, Judge.

Quall Cardot, John M. Cardot and Mary E. Krugh for Plaintiff and Appellant.

Aleshire & Wynder, Anthony R. Taylor and Michael C. Huston; Douglas T. Sloan, City Attorney, for Defendant and Respondent.

McCormick, Barstow, Sheppard, Wayte & Carruth, Jeffrey M. Reid and Christopher S. Hall for Real Parties in Interest and Appellants.

-ooOoo-

-ooOoo-

Appellant Muskan Food & Fuel, Inc. (Muskan Food) filed a petition for writ of mandate to challenge the City of Fresno's (City) approval of a conditional use permit for the development of a neighborhood shopping center across the street from Muskan Food's gas station and convenience store. The proposed development includes a specialty grocery store with a license to sell beer, wine and distilled spirits for consumption off the premises. The area has a high concentration of businesses selling alcohol and Muskan Food contends City misapplied the municipal ordinance restricting permits for new establishments selling alcohol in such areas. The superior court denied the petition, concluding City did not misinterpret the ordinance and substantial evidence supported City's decision to approve the conditional use permit.

On appeal, Muskan Food challenged both of these determinations. Real parties in interest filed a cautionary cross-appeal to assure they could challenge the superior court's conclusion that Muskan Food properly exhausted its administrative remedies. Real parties in interest and City contend the superior court properly decided the case on its merits and, alternatively, the denial of the writ petition should be upheld because Muskan Food did not exhaust its administrative remedies. We conclude Muskan Food did not exhaust the administrative appeal process set forth in City's municipal code and this failure bars its lawsuit. We therefore affirm the judgment.

## FACTS

### Parties

Muskan Food is a California corporation that owns real property located at the southeast corner of West Clinton Avenue and North Blythe Avenue in Fresno where it operates a convenience store and gas station as a Johnny Quik franchisee. Rajdeep Singh is the president and part owner of Muskan Food.

Analyst Properties, LLC, a California limited liability company, owns a 1.69 acre lot at the southwest corner of West Clinton Avenue and North Blythe Avenue (Subject

2.

Property), just across the street from Muskan Food's location. Kulvir Sekhon and Diwan Sekhon each own a 50 percent membership interest in Analyst Properties, LLC. Kulvir Sekhon and Analyst Properties, LLC, are the real parties in interest (collectively, Real Parties).

The Subject Property lies within the boundaries of respondent City. It is covered by the City's General Plan, City's West Area Community Plan, and the zoning ordinance contained in the Fresno Municipal Code (Municipal Code or FMC).

*The Proposed Development*

In 2015, Real Parties purchased the Subject Property based on advice from City staff that existing zoning and land use regulations would allow a gas station and convenience store to be built there. Also in 2015, Real Parties obtained rights to a license from the Department of Alcoholic Beverage Control (ABC) following a lottery conducted for such licenses. The ABC license is a "Type 21," which authorizes the sale of beer, wine, and distilled spirits for consumption off the premises where it was sold.[1]

On November 9, 2016, City received an application from Real Parties for a conditional use permit to construct an eight-vehicle gas station with canopy and commercial/retail buildings including a market selling alcohol. In February 2017, City's Development and Resource Management Department (DARM) distributed a request for comments, conditions, environmental assessment, and entitlement application review for Real Parties' proposed development. The project description in that request stated "[t]he owner proposes to construct two single story structures totaling 14,556 square feet, an 8 vehicle fuel dispensing component, 3 trash enclosures, and 61 parking stalls. Phase II of development will include the commercial retail with market selling alcohol with State

---

[1]     Business and Professions Code section 23958.4, subdivision (c)(5)(A) categorizes "Type 20 (off-sale beer and wine) and Type 21 (off-sale general)" as off-sale retail licenses. Muskan Food has a Type 20 license.

of California Alcoholic Beverage Type 21 alcohol license. The property is zoned CC/UGM *(Commercial – Community/Urban Growth Management)*."

The request for comments generated a range of responses from various districts, departments, and divisions. For example, City's police department requested conditions be included in the approval of the conditional use permit application. The requested conditions included the installation of a fully functional color digital video camera system, education of employees about the sale of alcoholic beverages, a prohibition of the sale of single containers of malt liquor, wine coolers and beer, and the posting of signs advising that consumption of alcohol, gambling and loitering were violations of municipal ordinances.

In September 2017, the director of DARM issued a notice of intent to grant the conditional use permit application, stating that written appeals protesting the possible approval should be submitted prior to 5:00 p.m. on October 2, 2017. The president of Muskan Food sent an e-mail to Phillip Siegrist, Planner II, of DARM, asserting that the area had a high concentration of off-sale alcohol licenses and that adding another licensed business went against efforts to resolve the over-saturation issue. The e-mail listed eight Type 21 licensed businesses and two Type 20 licensed businesses within a one-mile radius of the Subject Property.

Siegrist prepared a 13-page staff memorandum reviewing various aspects of the proposal and recommending an approval of the application, subject to specified conditions. The memorandum described the project as "the phased development of a neighborhood shopping center consisting of two 7,278 square-foot single story shell buildings (Building 'A' and Building 'B') totaling approximately 14,556 square feet" with eight fuel pumps and canopy. The project also included a proposal to use 2,836 square feet of one building "as a specialty grocery store/automobile service station" with a Type 21 license to sell alcohol. The memorandum addressed zoning by stating "the proposed neighborhood shopping center consisting of a combination specialty grocery

4.

store/automobile service station and general retail/office space is consistent with the Community Commercial planned land use designation." The memorandum stated specialty grocery stores are permitted in the Community Commercial zone district " 'by-right,' " but a request by such a store to sell alcoholic beverages requires "an approved conditional use permit in accordance with and subject to additional regulations for special uses in FMC [s]ection 15-2706. Furthermore, specialty grocery stores following prescribed design guidelines outlined in Policy and Procedure No. C-005 may qualify for an exception from the location restrictions for new establishments selling alcoholic beverages, and therefore are allowed to sell alcoholic beverages with an approved conditional use permit."[2] The memorandum recommended the approval of the application for a conditional use permit and specified the conditions of approval.

---

[2] FMC section 15-2706 addresses alcohol sales. The location restrictions for new establishments that are applicable in this case were contained in subsection E of FMC former section 15-2706. It provided that a new establishment shall not be located in a high crime area or within 500 feet of sensitive uses, such as public parks, playgrounds, schools or alcohol or drug treatment facilities. (FMC former § 15-2706-E(1), (3).) It also provided that a new establishment "shall not be located within 500 feet of an existing establishment" and "shall not be located in an area of high concentration . . . as determined by the [ABC]." (FMC former § 15-2706-E(2), (4).) In this appeal, it is undisputed that the latter two restrictions applied to Real Parties' proposal and, therefore, it was required to qualify for an exception.

FMC former section 15-2706-E(5) stated "[a] new establishment may be excepted from location restrictions if the Review Authority determines any of the following: [¶] . . . [¶] b. The proposed off-premises sale of alcoholic beverages is incidental and appurtenant to a larger retail use and provides for a more complete and convenient shopping experience."

This exception's implementation was guided by City's Policy and Procedure No. C-005, which stated (1) specialty grocery stores enhance neighborhoods and provide specialty products not often found in general markets and (2) specialty grocery stores following the prescribed design guidelines "may qualify for Exception B of Fresno Municipal Code [former] §15-2706.E.5 and be allowed to sell alcohol with a conditional use permit as incidental and appurtenant to a larger retail use." The policy set forth eight design elements and defined "Specialty Food Grocer" by referring to the percentage of floor space dedicated to specialty foods (at least 70 percent), fresh food (at least 10

DARM's planning manager recommended approval. On October 19, 2017, the director of DARM signed the memorandum, approving the conditional use permit. As a result, City now characterizes certain contents of the memorandum as the director's findings, including the memorandum's discussion of location restrictions, which states in full:

> "According to FMC [former] [s]ection 15-2706-E (Location Restrictions for New Establishments), new off-sale alcohol establishments that are under 10,000 square feet are prohibited if they are located near sensitive uses, other establishments, within high crime areas, or within high concentration areas. [¶] The subject site is located in Census Tract 38.08. According to ABC, Census Tract 38.08 currently has four active off-sale alcohol licenses. ABC authorizes one off-sale alcohol license per 1,075 people per census tract. Census Tract 38.08 has a population of 5,082. Per ABC, four off-sale alcohol licenses are allowed in Census Tract 38.08. Therefore, the addition of a new off-sale alcohol license would create an over-concentration of off-sale alcohol licenses within Census Tract 38.08 than authorized for that census tract. However, as previously mentioned in the Background section above, Policy and Procedure No. C-005 allows for an exception from the location restrictions to be made to allow alcohol sales as specialty grocery stores if the store includes eight key elements."

On the same day as the director's approval, DARM notified Real Parties' architect of the application's approval, the conditions to be complied with before the building permits would be issued, and the other conditions imposed. One of the conditions stated "[d]evelopment and operations shall occur in accordance with the following required elements pursuant to the City of Fresno Policy and Procedure No. C-005 for Specialty Grocery Stores." One element required (1) at least 70 percent of retail space to be dedicated to specialized food products, such as foods from a specific country, ethnicity, or locality; (2) at least 10 percent of the retail space to be dedicated to fresh foods, such as dairy, produce, meat, poultry, and fish; and (3) no more than 5 percent of retail floor

percent), and alcohol (not more than 5 percent). It also stated "Planning Staff will determine compliance with design guidelines. DARM Director will determine whether Exception B can be applied on a case by case basis."

area to be dedicated to alcohol.  Another condition stated that "[o]perations and development . . . shall occur in accordance with all requirements included within Section 15-2706 of the FMC pertaining to uses with Alcohol Sales."

On October 19, 2017, notice of the director's action in granting the conditional use permit application was mailed to persons who had submitted objections.  The notice stated that, "pursuant to City of Fresno Policy and Procedure No. C-005, specialty grocery stores following a strict definition and prescribed design guidelines qualify for an exception to the location restrictions, and therefore are allowed to sell alcoholic beverages with an approved Conditional Use Permit."

*Appeal of Director's Approval*

On November 3, 2017, a law firm representing Muskan Food submitted a letter to the director of DARM stating its "client protests and appeals the Director's decision to approve Conditional Use Permit Application No. C-16-097" and listing eight reasons for the appeal.  Those reasons included many cites to the location restrictions and related exceptions in Municipal Code former section 15-2706-E.

On December 6, 2017, the City's planning commission held a public hearing on the appeal.  The planning commission received a staff report that was 10 pages long without its 13 exhibits.  The report recommended denying the appeal and upholding the director's approval of the conditional use permit.  In response to Muskan Food's assertion that the applicant submitted insufficient information to establish that any exception found in Municipal Code former section 15-2706-E-5 applied, the report stated:

> "The applicant submitted enough information for staff to determine the project's compliance with the Specialty Food Grocer definition and meet all eight of the key design elements pursuant to Policy and Procedure No. C-005.  As such, there is sufficient information for the Review Authority to determine the proposed off-premises sale of alcoholic beverages is incidental and appurtenant to a larger retail use and provides for a more complete and convenient shopping experience pursuant to FMC [former] [s]ection 15-2706-E-5-b."

7.

At the public hearing, several members of the public presented their views, some supporting the project and some opposing it. The planning commission, by a vote of four to three, approved the conditional use permit, subject to the conditions of approval specified by DARM. The planning commission's subsequently prepared resolution stated "that, after receiving the staff report and testimony, the Fresno City Planning Commission has determined that there is sufficient evidence in the record that Conditional Use Permit Application No. C-16-097 complies with City of Fresno Policy and Procedure No. C-005 and therefore qualifies for Exception B of Section 15-2706-E-5 of the Fresno Municipal Code."

*Post-Decision Action by Muskan Food*

Muskan Food contends that after the planning commission's decision its president (1) visited City's website on December 7, 2017, to obtain contact information for the mayor; (2) was unable to locate direct contact information for the mayor; and (3) completed an online contact form that included a petition asking the mayor to appeal the planning commission's decision of the prior day.[3]

On December 8, 2017, Muskan Food's president sent an e-mail to Andy Chhikara, president of the Fresno chapter of the American Petroleum and Convenience Store Association (APCA). The e-mail began by stating: "I want[] to update you regarding issuance of a new type 21 off sale License" at the Subject Property. It also stated the

---

[3] A footnote in Muskan Food's reply brief states: "This document was never produced by the City." However, footnote 6 in Muskan Food's opening brief filed in the superior court on September 25, 2018, referred to the document and stated: "The information contained in this appeal is the identical information found in Ex. C, pg. 3." Presumably, Muskan Food meant "petition" when it used the word "appeal" in this footnote. Page 3 of Exhibit C to Muskan Food's opening brief in the superior court is a December 8, 2017 e-mail from Muskan Food's president to a convenience store association. For purposes of this appeal, we accept Muskan Food's representation of fact to the superior court that the information contained in the December 7, 2017 document was identical to the subsequent e-mail. (See generally Bus. & Prof. Code, § 6068, subd. (d); Rules Prof. Conduct, rule 3.3 [duty of candor toward the tribunal].)

8.

"Planning Commission approved the off sale liquor license, denied our appeal, and ignored views of other concerned citizens who were present in the meeting." The e-mail described provisions in the Municipal Code governing businesses with off-sale licenses and recent attempts to amend those provisions. It also disagreed with calling the proposed store a specialty grocery store and closed by stating:

> "I have a hard time understanding the City's approach towards off sale licenses, the City is contradicting itself and is showing to have double standards. [¶] Please help me raise my concern with the City officials so we can stop this. I really appreciate your help. [¶] Thank you."

Later that day, Chhikara sent an e-mail to the mayor. Chhikara's e-mail included the e-mail he received from Muskan Food's president and stated that e-mail "shows the same concern where Planning department and city is issuing multiple ABC licenses in street corner or in already saturated area." Chhikara's e-mail also stated:

> "We as association and Fresno business are pro business but having business and we have been discussing with city hall over 10 year[s] and asking city to control or Stop giving these ABC licenses. Later on these licenses become issue for every one and small business like ours get bad names in city and in some areas. [¶] I would appreciate your time to look in this concern. [¶] Thanks!!"

On Saturday, December 9, 2017, the mayor sent a reply e-mail to Chhikara that stated: "Thanks for the e[-]mail Andy. I'm not sure why the Planning Commission is approving ABC licenses. We need to have a meeting to discuss this. I will invite Serop Torossian the chair of the Planning Commission to be at the meeting."

On December 20, 2017, the law firm representing Muskan Food sent a letter to the director of DARM with a subject line referring to an appeal of the planning commission's decision to deny Muskan Food's appeal and uphold the director's approval of the conditional use permit. The letter stated Muskan Food "disagrees with the Planning Commission findings and decision and, therefore, hereby appeals such decision to the Fresno City Council pursuant to FMC Section 15-5017 based upon" five grounds.

9.

On December 28, 2017, the director of DARM responded in a letter stating in part:

"Pursuant to Fresno Municipal Code (FMC) Section 15-5017, Planning Commission decisions may be appealed to the City Council by the Councilmember of the district in which the project is located or by the Mayor, either on their own initiative or upon receiving a petition from any person. Failure by any interested person to petition a Councilmember or the Mayor for an appeal shall constitute a failure to exhaust administrative remedies.

"Neither the Councilmember for the District nor the Mayor have submitted an appeal for the subject application to be considered by [the] Council. Therefore, in accordance with FMC Section 15-5012 and 15-5017, the 15-day appeal period has since expired and the Planning Commission's decision is final. Staff is returning the . . . check [for the appeal fee], enclosed, in the amount of $30.00."

## PROCEEDINGS

On February 20, 2018, Muskan Food filed a petition for writ of mandate with the Superior Court of Fresno County. The petition requested a writ ordering City to set aside the DARM director's approval of the conditional use permit and the planning commission's decision to uphold that approval. On December 7, 2018, after the administrative record was lodged with the superior court and the parties filed their briefs, the matter was argued and taken under submission by the court.

On March 4, 2019, the superior court signed and filed a 19-page statement of decision and order denying Muskan Food's petition for writ of mandate. The statement of decision rejected the argument of City and Real Parties that Muskan Food had failed to exhaust its administrative remedies. On the merits, the superior court determined that (1) the planning commission identified the exception to the location restrictions being applied to the proposed project and (2) substantial evidence supported the planning commission's findings that the project met the requirements of the exception for specialty grocery stores.

Later in March 2019, the superior court filed a judgment denying Muskan Food's petition for writ of mandate in its entirety and identifying City and Real Parties as the prevailing parties entitled to recover their costs. Muskan Food filed a timely appeal. Real Parties filed their cross-appeal.

**DISCUSSION**

## I. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The threshold procedural issue in this appeal, and the issue we ultimately find to control, is whether Muskan Food exhausted the available administrative remedies. We begin with an overview of the exhaustion doctrine.

### A. Overview of Doctrine

The doctrine of exhaustion of administrative remedies requires a party to exhaust all available administrative remedies and obtain a final administrative decision as a condition precedent for judicial review. (1 Cal. Administrative Mandamus (Cont.Ed.Bar 3d ed. 2020) § 3.9, pp. 3-8 to 3-9.) Thus, when an applicable ordinance, regulation or statute provides an adequate administrative remedy, a party must exhaust that remedy before seeking judicial relief. (*Plantier v. Ramona Municipal Water Dist.* (2017) 12 Cal.App.5th 856, 865.) California courts usually will not have subject matter jurisdiction over a dispute until the administrative tribunal has made a final determination. (*Foster v. Sexton* (2021) 61 Cal.App.5th 998, 1023 (*Foster*); see *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 321 [exhaustion is a " ' "jurisdictional prerequisite to resort to the courts" ' "].)

The petitioner has the burden of proving timely exhaustion of administrative remedies. (*Kim v. Konad USA Distribution, Inc.* (2014) 226 Cal.App.4th 1336, 1345.) "Whether the doctrine of exhaustion of administrative remedies applies in a given case is a legal question that we review de novo." (*Coastside Fishing Club v. California Fish & Game Com.* (2013) 215 Cal.App.4th 397, 414.)

11.

In *Rojo v. Kliger* (1990) 52 Cal.3d 65, the Supreme Court stated that "exhaustion of administrative remedies furthers a number of important societal and governmental interests, including: (1) bolstering administrative autonomy; (2) permitting the agency to resolve factual issues, apply its expertise and exercise statutorily delegated remedies; (3) mitigating damages; and (4) promoting judicial economy." (*Id*. at p. 86; see Asimow et al., California Practice Guide: Administrative Law (The Rutter Group 2020) ¶¶ 15:12 to 15:15, pp. 15-2 to 15-3 [rationales for exhaustion doctrine are promoting efficiency, respecting the autonomy of the administrative agency, and avoiding end-runs].) The policy favoring administrative autonomy reflects the assessment that "courts should not interfere with an agency determination until the agency has reached a final decision" (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 391) and avoids running afoul of the separation of powers doctrine (*Department of Personnel Administration v. Superior Court* (1992) 5 Cal.App.4th 155, 168, superseded by statute as stated in *Stoetzl v. Department of Human Resources* (2019) 7 Cal.5th 718, 742). The policy of judicial efficiency is promoted by the exhaustion doctrine because it (1) lightens the burden on courts in cases where an administrative remedy is available; (2) facilitates the development of a complete record that draws on administrative expertise; and (3) serves as a preliminary sifting process that will unearth and analyze the relevant evidence. (*Yamaha Motor Corp. v. Superior Court* (1986) 185 Cal.App.3d 1232, 1240.)

### B.  City's Appeal Procedures

Chapter 15 of the Municipal Code contains the Citywide Development Code, which also is referred to as the "Development Code" or "Zoning Ordinance" and consists of six parts. (FMC §§ 15-101, 15-103-A.) Part I of chapter 15 contains general provisions and part V addresses administration and permits. (FMC § 15-103-A.)

The general provisions include rules for construing the language of the Citywide Development Code.  (FMC §§ 15-201 to 15-203.)  Municipal Code section 15-203 provides:

> "In the absence of an ordinance or resolution approved by the City Council, the Director, upon consultation with the City Attorney's Office, shall make the interpretation for any definition not expressly identified in, or provide clarification and interpretation of, this Development Code."

Part V of the Citywide Development Code consists of articles 49 through 63. Article 50 "establishes procedures that are common to the application and processing of all permits and approvals provided for in this Code."  (FMC § 15-5001.)  The two procedural provisions of interest in this appeal are Municipal Code sections 15-5012, Effective Dates, and 15-5017, Appeals, the text of which is set forth below.

Article 53 governs conditional use permits and grants the DARM director the authority to "approve, conditionally approve, or deny applications for Conditional Use Permits based on consideration of the requirements of this article."  (FMC § 15-5303.) Pursuant to Municipal Code section 15-5309, "Conditional Use Permit decisions are subject to the appeal provisions of Section 15-5017."

The time to appeal a decision on a permit application is addressed in Municipal Code section 15-5012, which provides in part:

> "A final decision on an application for any approval subject to appeal shall become effective after the expiration of the 15-day appeal period following the date of action on an application, unless an appeal is filed.  Appeals shall be filed with the Director before the close of business on the 15th day.  No building permit or permits shall be . . . issued until the 16th day following the date of the action.  Should the permit not include a building permit, activities of said permit shall not commence until the 16th day.

> "A.  **Planning Commission Decision**.  Unless the Planning Commission decision is appealed for hearing to the Council in accordance with Section 15-5017, Appeals, the decision of the

13.

Commission shall be final, subject to writ of administrative mandamus under 1094.6 of the Code of Civil Procedure[].

"B. **Failure to Appeal Commission Decision**. *Failure by any interested person to petition a Councilmember or the Mayor for an appeal shall constitute a failure to exhaust administrative remedies*." (Italics added.)

The two levels of appeal are addressed in Municipal Code section 15-5017, which provides in part:

"A. **Applicability**. Any action by the Director or Planning Commission in the administration or enforcement of the provisions of this Code may be appealed in accordance with this section.

"1. **Appeals of Director Decisions**. Decisions of the Director made pursuant to this Code may be appealed to the Planning Commission by filing a written appeal with the Director. Appeals may be filed by any person aggrieved by the decision. The appeal shall identify the decision being appealed and shall clearly and concisely state the reasons for the appeal. The appeal shall be signed by the person making the appeal and accompanied by the required fee.

"2. **Appeals of Planning Commission Decisions**. *Decisions of the Planning Commission may be appealed to the City Council by the Councilmember of the district in which the project is located or by the Mayor, either on their own initiative or upon receiving a petition from any person*. Appeals must be initiated by filing a letter with the Director. Such action shall require a statement of reasons for the appeal.

"3. **CEQA Appeals**. . . .

"B. **Time Limits**. Unless otherwise specified in governing State or federal law, all appeals shall be filed with the Director in writing within 15 days of the date of the action, decision, CEQA determination, motion, or resolution from which the action is taken. [¶] . . . [¶]

"F. **Effect of Council Decision**. Unless otherwise provided in the City Charter or Fresno Municipal Code, the Council decision shall be final and effective and subject to a writ under Code of Civil Procedure Section 1094.5 or . . . Section 1085 immediately upon Council action." (Italics added.)

14.

C.    Contentions of the Parties

Muskan Food contends the foregoing Municipal Code provisions describing the procedures for appealing the approval of a conditional use permit are vague, the procedures required are minimal, and it met those procedural requirements and thereby exhausted its administrative remedies.  Muskan Food interprets the provisions to mean that a "petition" must be submitted by " 'any interested person' " to the relevant councilmember or the mayor.  Muskan Food asserts it "took many reasonable steps to attempt to convince the Mayor or the District Councilmember to appeal the decision of the Planning Commission."

In contrast, City contends no petition for an appeal of the planning commission's decision was submitted to the mayor or councilmember for the district where the Subject Property is located and, as a result, Muskan Food failed to exhaust the administrative remedies.  City asserts the different communications Muskan Food allegedly had with the mayor and councilmember prior to the expiration of the 15-day petition period that were admitted by the superior court never indicated a desire by Muskan Food to actually appeal the planning commission's decision.  In City's view, voicing displeasure with a decision is not tantamount to petitioning for appeal of that decision within the requirements of the Municipal Code.

Real Parties point out that Muskan Food has the burden of pleading and proving that it satisfied the exhaustion requirements.  Real Parties contend that Muskan Food offered no evidence showing it satisfied the unambiguous request requirement of Municipal Code section 15-5012-B, whether orally, in writing, or by electronic submission.  In Real Parties' view, any request or petition must ask the recipient—either the mayor or councilmember—to seek a city council hearing to evaluate the planning commission's decision in question.

15.

### D. Vagueness

We first consider Muskan Food's contention that the procedures for appealing a planning commission's decision are vague. This contention is the equivalent of asserting the procedures in the Municipal Code are ambiguous—that is, susceptible to more than one reasonable meaning. (See *Superior Court v. Public Employment Relations Bd.* (2018) 30 Cal.App.5th 158, 187.) Muskan Food refers to the use of "to petition" in Municipal Code section 15-5012-B and the phrase "a petition from any person" in Municipal Code section 15-5017-A(2) and notes the word "petition" is not defined by the Municipal Code. Muskan Food contends that it is unclear whether oral petitions are allowed, whether the petition must be delivered by a particular method (such as mail or hand delivery), or whether the plaintiff must be the one to petition.

The parties have not addressed whether the alleged vagueness in the Municipal Code appeal and exhaustion provisions rendered an appeal *unavailable* and, thus, excused Muskan Food from completing the appeal procedure. As the foundation for our analysis of vagueness, we briefly discuss this type of unavailability. Ordinarily, an administrative remedy must be capable of being used to accomplish a purpose—here, obtain city council review of a planning commission decision—and accessible to be "available." (See *Foster*, *supra*, 61 Cal.App.5th at p. 1026.) Thus, one type of unavailability occurs when the administrative scheme is so difficult to understand that an ordinary person cannot discern and navigate it. (*Ibid*.) From a practical perspective, such an administrative scheme is incapable of use and exhaustion is excused. (*Ibid*.)

Muskan Food's vagueness argument focuses on the use of the word "petition" and the absence of an explanation of how one petitions or what a petition is. We conclude the word "petition" is ambiguous as to the level of formality required. The verb "petition" is defined as "to make a request to : ENTREAT; *esp* : to make a formal written request to." (Webster's 3d New Internat. Dict. (1993) p. 1690.) Thus, the verb "petition" could be interpreted to mean making (1) a simple oral request, (2) a formal written request, or

16.

(3) something in between.  The noun "petition" has a similar range of meanings.  It can mean "an earnest request" or "a formal written request addressed to an official person or organized body."  (*Ibid*.)  Black's Law Dictionary (8th ed. 2004) defines the noun "petition" as "[a] formal written request presented to a court or other official body."  (*Id*. at p. 1182.)  Based on these definitions, we conclude the use of the word "petition" in Municipal Code sections 15-5012-B and 15-5017-A(2) rendered those provisions ambiguous.

One way to resolve an ambiguity in Citywide Development Code is for "the Director, upon consultation with the City Attorney's Office, . . . [to] provide clarification and interpretation of" the ambiguous term or provision.  (FMC § 15-203.)  Nothing in the record before this court shows the director consulted with the City Attorney's Office and then clarified how to properly petition for an appeal.  Consequently, we will resolve the meaning of the word "petition" used in Municipal Code sections 15-5012 and 15-5017.  (*Bruni v. The Edward Thomas Hospitality Corp.* (2021) 64 Cal.App.5th 247, 254 [interpretation of an ordinance presents a question of law subject to de novo review]; see *As You Sow v. Conbraco Industries* (2005) 135 Cal.App.4th 431, 447 ["interpretation of an administrative regulation is a legal determination and is reviewed de novo"].)

When interpreting an ambiguous statute, regulation or ordinance, courts do not examine the words in isolation, but consider the provision in the context of the entire scheme of which it is a part.  (*Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190.)  The required petition is part of the appeal process and the provisions governing that process explicitly require certain acts be done in writing.  For example, a person appeals a decision of the Director to the Planning Commission, "by filing a written appeal with the Director."  (FMC § 15-5017-A(1).)  Also, that written appeal "shall be signed by the person making the appeal."  (*Ibid*.)  In comparison, an appeal of a decision by the Planning Commission "must be initiated by filing a letter with the Director."  (FMC § 15-5017-A(2).)  This reference to a letter eliminates the possibility of the mayor or

councilmember making an oral appeal.  Based on the requirements for writings in the closely related provision and the absence of any language requiring a petition to be in writing or, more specifically, a letter, we interpret the word "petition" broadly and conclude it encompasses oral requests made to the mayor or councilmember.  This interpretation avoids the possibility of an implicit writing requirement functioning as a trap for the unwary and, thus, assures an ordinary person can discern and navigate the appeal procedures.  (See generally *Foster*, *supra*, 61 Cal.App.5th at p. 1026.)

E.     Standard for Interpreting Petitions

Before addressing whether the communications by or on behalf of Muskan Food constitute a petition for purposes of the Municipal Code, we consider what legal standard should apply when interpreting those communications.  We conclude the subjective intent of the person seeking to exhaust the administrative procedures is not the appropriate test.  Instead, we conclude the communication should be given an objectively reasonable interpretation.  The objectively reasonable standard is used by courts in many contexts, including when interpreting the coverage provided by an insurance policy (*E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 470) or the allegations in a pleading (*Davis v. Fresno Unified School Dist.* (2020) 57 Cal.App.5th 911, 926).  Similarly, whether a particular statement is considered a "threat" for purposes of title 18 United States Code section 248, "is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault" (*Planned Parenthood of the Columbia/Willamette, Inc. v. American Coalition of Life Activists* (9th Cir. 2002) 290 F.3d 1058, 1074).  To determine the objectively reasonable meaning of a communication, the language must be considered in context.  (See *Deere & Co. v. Allstate Ins. Co.* (2019) 32 Cal.App.5th 499, 514 [meaning of insurance policy];

18.

*City of San Jose v. Garbett* (2010) 190 Cal.App.4th 526, 541-542 [context is important in determining whether a statement is a threat].)

F.      No Record of an Oral Petition

Muskan Food asserts it "requested to meet with the District City Council Person on December 7, 2017 (3 CT 583; 5 CT 1137-1138) [and] met with the District City Council Person thereafter to request an appeal (3 CT 583; 5 CT 1138)." The assertion about the request *for a meeting* is supported by a cite to a copy of a December 7, 2017 e-mail from Muskan Food's president to "District3@fresno.gov" stating: "I would like to set up a meeting with Councilmember to raise citizens concerns over new Liquor store establishment (Robs Liquor) in already over concentrated off sale liquor area. Our district have second highest off sale Lic after under District 7. Please allow us time to meet." In addition, Muskan Food's assertion that its principals met with the councilmember "to request an appeal" is supported by cites to a brief it filed in the superior court and the court's written decision.

Statements by an attorney, whether made in court or in a brief, are not evidence. (See Evid. Code, § 140 [definition of evidence]; *Van de Kamp v. Bank of America* (1988) 204 Cal.App.3d 819, 843.) Thus, Muskan Food's cite to its own brief does not identify evidence sufficient to support a finding that an oral petition for an appeal was made at the meeting with the councilmember.

The superior court's written decision addressed the meeting with the councilmember by stating that "on December 19, 2017, an informal dinner meeting between Navdeep Singh, Bill Nijjar, Hatjeet Tiwana, and Coun[ci]lmember Oliver Baines where the topic and issues surrounding the Planning Commission's December 6, 2017, decision were discussed." This statement is not an explicit finding that a request for an appeal was made at the meeting. Furthermore, we cannot conclude the superior court impliedly found a request for an appeal was made because implied findings must be

19.

supported by substantial evidence.  (See *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 [appellate courts accept trial court's implied finding only if supported by substantial evidence].)  Here, Muskan Food has cited no evidence in the record that supports a finding that the councilmember was requested to appeal the planning commission's decision.  Consequently, Muskan Food, which has the burden of proving it exhausted the administrative remedies, has not established that it fulfilled the Municipal Code's petition requirement by orally requesting the councilmember appeal the planning commission's decision approving the conditional use permit.

G.     E-mail Petition

Muskan Food also refers to the December 8, 2017 e-mail its president sent to Chhikara, president of the Fresno chapter of the APCA.  Chhikara, in turn, sent an e-mail to the mayor that attached Muskan Food's e-mail.  Muskan Food's brief describes Chhikara's e-mail as requesting "the Mayor appeal the Planning Commission's decision."  To provide context for our evaluation of Chhikara's December 8, 2017 e-mail, we first consider the contents of Chhikara's earlier e-mail to the mayor regarding the proposed development.

1.     *September 2017 E-mail to Mayor*

On September 29, 2017, Chhikara sent an e-mail to the mayor addressing Real Parties' application for a conditional use permit and the saturation of establishments licensed to sell alcohol in the area:

"Dear Mayor . . . Brand,

"I got several calls on some ABC licenses through out city.  Below e[-]mail is another example and serious concerns of ABC license saturation in Fresno.  Earlier I had spoke with Tim [Orman] and shared this on going concern in which, over last 10 yrs we have been asking city to control and stop giving ABC licenses on all corners or with in so many sq miles which is causing over saturation.

20.

"I know you and your team is working on this problems and in our last meeting at your office we had gave some suggestions & inputs to help your team to resolve our city and community problem.  Please look at this below detailed e[-]mails on how many ABC licenses are in the area.  Having a additional business is revenue to city and area but adding ABC license in that business becomes an issues.

"There were few more abc license coming up.  [¶]  Also a 24 hrs ARCO gas station in fig garden in which several ABC licenses around there.  [¶] Shaw and Hayes have several licenses close by.  [¶]  On Cherry and Jenson.

"Please do needful to see this ongoing issues.  We do know you have a lot of things going on in city and will find a way to fix this issue."

Chhikara's e-mail attached an e-mail from Muskan Food's president, which listed the businesses with licenses near the Subject Property and closed by stating:

"I will be sharing this information with my local [councilmember] and with Tim Sheehan from Fresno Bee who had written the 'Booze Flows Freely in Fresno' article.  Andy, I would like you to add your thoughts to this and please forward my e[-]mail to the Mayor Office and planning commission. The city cannot come back and place blame on the store owners for running these types of businesses especially when the City of Fresno can control issuance of licenses and continue to try doing a better job at planning."

The mayor's reply e-mail to Chhikara stated:  "We are working on a solution that will not punish the good owners.  If you would like to meet please let me know."

### 2. December 2017 E-mail to Mayor

Chhikara's December 8, 2017 e-mail to the mayor and a member of his staff contained the following message:

"Dear Mr. Lee and Tim.

"Please see below e[-]mail from one of our member e[-]mail reg[ar]ding a planning commission hearing this week.  [I]t shows the same concern where Planning department and city is issuing multiple ABC licenses in street corner or in already saturated area.  I have not reviewed this area but according to this e[-]mail, seems like there are 6 ABC licenses in half mile radius and 10 off sale liquor license in 1 mile radius.  This site is also happen to be in Mr. Bain[e]s area.

21.

"We as association and Fresno business are pro business but have business and we have been discussing with city hall over 10 year and asking city to control or Stop giving these ABC licenses.  Later on these licenses become issue for every one and small business like ours get bad names in city and in some areas.  [¶]  I would appreciate your time to look in this concern. [¶]  Thanks!!"

On Saturday, December 9, 2017, the mayor sent a reply e-mail to Chhikara that stated:  "Thanks for the e[-]mail Andy.  I'm not sure why the Planning Commission is approving ABC licenses.  We need to have a meeting to discuss this.  I will invite Serop Torossian the chair of the Planning Commission to be at the meeting."  Whether the suggested meeting was held is not addressed in the parties' briefing and we have located nothing in the record indicating such a meeting occurred.

Here we consider what the mayor's response did not include.  It did not describe Chhikara's e-mail as a petition and made no mention of an appeal to the city council.  If Muskan Food regarded the mayor's response as inadequate or missing the point, it could have clarified its intent by submitting a more specific request to the mayor.  We have located nothing in the record showing Chhikara or Muskan Food attempted to inform the mayor that their combined e-mails were intended to be a petition for an appeal or otherwise communicated with him about an appeal of the planning commission's decision.

Additional context for Chhikara's December 8, 2017 e-mail to the mayor is provided by the December 20, 2017 letter of Muskan Food's attorney to the director of DARM.  The letter's subject line referred to an appeal of the planning commission's decision upholding the director's approval of the conditional use permit.  The letter stated Muskan Food "disagrees with the Planning Commission findings and decision and, therefore, hereby appeals such decision to the Fresno City Council pursuant to FMC Section 15-5017 based upon the following [grounds]."  The letter does not mention Muskan Food previously submitting a petition to the mayor or councilmember or the fact that the Municipal Code authorizes only the mayor or councilmember from the affected

22.

district to appeal a planning commission decision to the city council. Instead, the letter's use of the words "hereby appeals" suggests Muskan Food's attorney thought a direct appeal was possible.

In applying the objectively reasonable standard to Chhikara's December 8, 2017 e-mail to the mayor and its attachment, we conclude it does not constitute a "petition" for purposes of Municipal Code section 15-5017-A(2).

Chhikara's e-mail begins by referring to Muskan Food's attached e-mail, stating it raises the issue of over-saturation of establishments licensed to sell alcohol, and summarizes Muskan Food's assertions about existing licenses near Real Parties' proposed development. That attached e-mail uses the word "appeal" once, referring to the planning commission's denial of its appeal.

The second paragraph of Chhikara's e-mail states the APCA has been discussing the saturation issue with city hall for over 10 years and asking City "to control or [s]top giving these ABC licenses" that cause over-saturation. The e-mail concludes: "I would appreciate your time to look in[to] this concern. [¶] Thanks!!"

Because the e-mail refers to the general problem of over-saturation of establishments licensed to sell alcohol and the fact the APCA has been involved with the issue for over 10 years, it is not reasonable to interpret Chhikara's general request for the mayor "to look in[to] this concern" as a specific request that the mayor submit an appeal of the planning commission's approval of Real Parties' proposed development. A reasonable person acting as mayor and receiving the e-mail would not think he or she is being requested to comply with the Municipal Code's letter and timing requirements for appealing a planning commission decision to the city council. (See FMC §§ 15-5012-B, 15-5017-A(2).) Furthermore, when the mayor responded and described his proposed next step—that is, "have a meeting to discuss this"—Chhikara did not clarify that he wanted the mayor to submit an appeal.

The request at the end of the Muskan Food e-mail attached to Chhikara's e-mail states: "Please help me raise my concern with the City officials so we can stop this. I really appreciate your help." Chhikara's e-mail did raise Muskan Food's concern with the mayor and, as a result, the mayor proposed a meeting, which meeting was to include the chairperson of the planning commission.

Our interpretation of the general statements in the e-mails submitted to the mayor as not constituting a petition is consistent with the policies underlying the exhaustion doctrine. It is not difficult to comply with the requirements of Municipal Code section 15-5017-A(2) and make a request to the mayor or councilmember to appeal a planning commission decision. Allowing generalized statements of concern to impliedly fulfill the Municipal Code's requirement would encourage end-runs, undermine judicial efficiency, and undermine the city council's autonomy as the elected body with the ultimate authority over land use decisions. (See *Yamaha Motor Corp. v. Superior Court*, *supra*, 185 Cal.App.3d at p. 1240; Asimow et al., California Practice Guide: Administrative Law, *supra*, ¶¶ 15:12 to 15:15, pp. 15-2 to 15-3.) Muskan Food's failure to exhaust administrative remedies here frustrated the policy of promoting administrative autonomy as it applies to the interpretation and application of the Municipal Code provisions governing location restrictions on establishments licensed to sell alcohol. The city council is especially well suited, as the entity that enacted the Municipal Code, to determine its meaning and render a final decision on its application to a specific project and was entitled to the opportunity to do so.

A judgment may be affirmed on a legal theory other than the one relied on by the superior court. (*Fuller v. Bowen* (2012) 203 Cal.App.4th 1476, 1483-1484, fn. 6.) Based on the failure to exhaust administrative remedies, we conclude the superior court correctly denied Muskan Food's petition for writ of mandate. Accordingly, we do not reach the issues raised in Muskan Food's appeal.

## DISPOSITION

The judgment is affirmed.  City and Real Parties shall recover their costs on appeal.

                                                                    DETJEN, J.

WE CONCUR:


HILL, P. J.


PEÑA, J.